United States Court of Appeals,

Fifth Circuit.

No. 94-60499

Summary Calendar.

Tamela J. DUTCHER, Plaintiff-Appellant,

v.

INGALLS SHIPBUILDING, Defendant-Appellee.

June 5, 1995.

Appeal from the United States District Court for the Southern District of Mississippi.

Before POLITZ, Chief Judge, JOLLY and BENAVIDES, Circuit Judges.

POLITZ, Chief Judge:

Tamela J. Dutcher appeals an adverse summary judgment in her suit against her former employer, Ingalls Shipbuilding, Inc., for discrimination under the Americans with Disabilities Act.[1] We affirm.

*Background*

On November 27, 1989 Dutcher sustained serious injury to her right arm in a gun accident. After extensive repair surgery, Dutcher began training as a welder, hoping thereby to prevent deterioration in the use of her arm. In July of 1991 she completed welding school and was hired by Ingalls.

Ingalls initially assigned Dutcher to the "bay area," a job requiring welders to climb as much as 40 feet to reach their work. On her second day of work Dutcher requested a transfer to the fab shop, an assignment involving little or no climbing, because of difficulties she experienced due to the injury to her arm. The request was denied because she had insufficient seniority to transfer to a fab shop position.

During the following month Dutcher worked in the bay area without any time off because of problems with her arm. At the end of that month, however, she secured a transfer to the fab shop

---

[1] 42 U.S.C. §§ 12101-12213 (Supp. III 1991).

because of her father's influence with the welding superintendent. She worked as a welder in the fab shop, or similar assignments, until laid off as part of a large-scale reduction in force in May 1992.

Ingalls recalled Dutcher on September 8, 1992 at which time she was told to report to the infirmary for a pre-employment physical. She advised the examining doctor that the condition of her arm prevented her from climbing and that she needed a job which did not require such. The doctor gave Dutcher the requested job restriction. Ingalls then advised Dutcher that it could not then employ her in light of the job restriction.

Dutcher contacted Ingalls' labor relations office which asked her to provide a current medical report on her arm. Five weeks later she returned with the requested information. Ingalls asked for an explanation of the delay and while reviewing the proffered reasons experienced another reduction in force resulting in every welder in Dutcher's job classification being laid off.

On June 21, 1993 Dutcher filed the instant action, asserting that Ingalls violated the ADA by refusing reinstatement in September of 1992 to her job in the fab area. The district court entered summary judgment in favor of Ingalls, finding that the impairment of Dutcher's arm did not qualify as a "disability" under the ADA. Dutcher timely appealed.

*Analysis*

We review a grant of summary judgment applying the same standard as the district court.[2] Summary judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fact questions are viewed in the light most favorable to the nonmovant and questions of law are reviewed *de novo.*

Dutcher contends that the district court erred when it concluded that she does not have an ADA-qualified disability. She maintains that when the summary judgment evidence on the extent of her disability is viewed in the most favorable light that there is a genuine issue of material fact whether her injured arm qualifies as a disability.

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or

---

[2]*Armstrong v. City of Dallas,* 997 F.2d 62 (5th Cir.1993).

discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[3]  The term "disability" as used in the ADA means:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment;  or

(C) being regarded as having such an impairment.[4]

The ADA restricts the meaning of impairment;  the parties, however, do not dispute that Dutcher's gun accident left her with a permanent impairment within the meaning of the statute.[5]  Dutcher, however, misconstrues the significance of this finding.  A physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA.  The statute requires an impairment that substantially limits one or more of the major life activities.

The ADA defines neither "substantial limits" nor "major life activities," but the regulations promulgated by the EEOC under the ADA provide significant guidance.  These regulations adopt the same definition of major life activities as used in the Rehabilitation Act.[6]  "Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking,

---

[3]42 U.S.C. § 12112(a).

[4]42 U.S.C. § 12102(2).  We note that this definition of "disability" is substantially equivalent to that in the Rehabilitation Act, 29 U.S.C. §§ 701-797 (1988, Supp. III 1991 & Supp. V 1993). *See Chandler v. City of Dallas,* 2 F.3d 1385, 1391 n. 18 (5th Cir.1993), *cert. denied,* --- U.S. ---- , 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994).

[5]A physical or mental impairment is defined as:

> (1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems:  neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine;  or

> (2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h)(1), (2).

[6]*Bolton v. Scrivner, Inc.,* 36 F.3d 939 (10th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995);  *see Chandler.*

breathing, learning, and working."[7]  Whether an impairment substantially limits[8] a major life activity

is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected

duration, and (3) its permanent or expected permanent or long-term impact.[9]

   We first examine whether Dutcher's impairment substantially limits a major life activity other

than working.[10]  Despite assertions to the contrary, both her deposition testimony and that of her

physician inform that Dutcher can "take care of the normal activities of daily living."  It is undisputed

that she can feed herself, drive a car, attend her grooming, carry groceries, wash dishes, vacuum, and

pick up trash with her impaired hand.  In her deposition testimony Dutcher admits that she has trained

herself to do "everything ... [she is] supposed to do" and that she can do "all of the basic things" she

needs to do in life with her arm.  Her medical expert testified that Dutcher can do lifting and reaching

as long as she avoids heavy lifting and repetitive rotational movements.  While her medical expert

offered the opinion that her arm is impaired, this fact, as we noted above, is not disputed.  More

relevant to today's inquiry is that there was no evidence offered on which a jury could find that this

---

[7]29 C.F.R. § 1630.2(i).  This listing, however, is not intended to be exhaustive.  Other major life activities could include lifting, reaching, sitting, or standing.  29 C.F.R. § 1630, Appendix to Part 1630—Interpretive Guidance on Title I of the Americans with Disabilities Act, § 1630.2(1).

[8]To substantially limit means:

> (i) Unable to perform a major life activity that the average person in the general population can perform;  or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity.

29 C.F.R. § 1630.2(j)(1)(i), (ii).

[9]29 C.F.R. § 1630, App., § 1630.2(j).

[10]42 U.S.C. § 12102(A);  29 C.F.R. § 1630, App., § 1630.2(j) ("If an individual is not substantially limited with respect to any other major life activity, the individual's ability to perform the major life activity of working should be considered.  If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working.").

impairment substantially limited a major life activity.[11]

Having concluded that Dutcher failed to present summary judgment evidence of a substantial limitation on a major life activity other than worki ng, we turn to her strongest argument:  Ingalls' actions demonstrate that her impairment affects the major life activity of working.  With regard to the activity of working:

> [S]ubstantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.[12]

Dutcher presents no evidence that her disability prevents her from performing an entire class of jobs.[13]  Her experience in the fab shop prior to her first layoff demonstrates that she can work as a welder;  her injured arm adversely affects only the functioning in a welding position requiring substantial climbing.  As we noted in *Chandler,*[14] the inability to perform one aspect of a job while retaining the

---

[11]Dutcher contends that her deposition also set forth that she has difficulty picking up little things from the floor, that she has trouble holding things up high or real tight for long periods of time, and that she sometimes has problems turning the car's ignition.  We are persuaded that a jury could not find that her impairment substantially limits major life activities on this basis.  *Cf. Coghlan v. H.J. Heinz Co.,* 851 F.Supp. 808 (N.D.Tex.1994) (denying summary judgment in light of evidence that impairment affected eating and sleeping).

[12]29 C.F.R. § 1630.2(j)(3)(i).

[13]We note that three additional factors can be considered when determining whether an impairment substantially limits the major life activity of working.  Those are:

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs);  and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

> 29 C.F.R. § 1630.2(j)(3)(ii)(A)-(C).  Dutcher provided no such evidence in opposing Ingalls' summary judgment motion.

[14]That *Chandler* construed provisions of the Rehabilitative Act is of no moment;  the substantial equivalency of the definition of disability under the Rehabilitation Act and the ADA strongly suggests that prior constructions of the Rehabilitation Act should be generally applicable

ability to perform the work in general does not amount to substantial limitation of the activity of working.[15] "An impairment that affects only a narrow range of jobs can be regarded either as not reaching a major life activity or as not substantially limiting one."[16] Thus, we conclude that Dutcher failed to provide summary judgment evidence that her impairment substantially limited a major life activity.

Dutcher also fails to raise a genuine question of fact about whether she has a disability under the ADA because she has a record of an impairment that substantially limits a major life activity.[17] There is no summary judgment evidence of such; similarly, there is no evidence that she had a "history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."[18]

Dutcher might have qualified as disabled under the ADA if she could have provided sufficient summary judgment evidence that she was regarded by Ingalls as having an impairment that substantially limited a major life activity, whether she actually had such an impairment or not.[19] The

in construing the ADA definition of "disability." *See Bolton,* 36 F.3d at 943 ("The legislative history of the ADA indicates that "Congress intended that the relevant caselaw developed under the Rehabilitation Act be generally applicable to the term "disability" as used in the ADA.' ") (quoting 29 C.F.R. § 1630, App., § 1630.2(g) (citing legislative history) (citations omitted)).

[15]*Chandler* (citing with approval *Elstner v. Southwestern Bell Tel. Co.,* 659 F.Supp. 1328 (S.D.Tex.1987), *aff'd,* 863 F.2d 881 (5th Cir.1988) (unpublished), where court held that service technician with impaired knee that prevented him from climbing utility poles was neither handicapped nor regarded as such within the meaning of the Rehabilitation Act because he could still perform work that did not require climbing).

[16]*Jasany v. United States Postal Service,* 755 F.2d 1244, 1249 n. 3 (6th Cir.1985) (interpreting Rehabilitation Act).

[17]42 U.S.C. § 12102(B).

[18]29 C.F.R. § 1630.2(k).

[19]42 U.S.C. § 12102(2)(C). "Regarded as having such an impairment" means that the individual:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

uncontroverted facts, however, are that Ingalls continued to employ her as a non-climbing welder after her initial transfer out of the bay area—the transfer which she claims put them on notice of her impairment. Dutcher concedes in her brief that Ingalls denied her a position solely because she could not climb; she does not suggest that she was denied a welding job because of a belief that her impaired arm would prevent her from performing adequately the welding function.[20]

Moreover, Dutcher offers no summary judgment evidence to controvert Ingalls' evidence that no non-climbing welding positions were available when she was denied reinstatement. Accordingly, the district court properly found that Ingalls did not deny Dutcher any available welding position on the basis of her impairment. We perforce conclude that, on these facts, a jury could not find that Ingalls regarded Dutcher as having a disability as contemplated by the ADA.

The judgment appealed is AFFIRMED.

---

(3) Has none of the impairments defined in ... [29 C.F.R. § 1630.2(h) ] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(1)(1)-(3).

[20]*See Forrisi v. Bowen,* 794 F.2d 931, 935 (4th Cir.1986) ("The statutory reference [in the Rehabilitation Act] to a substantial limitation indicates instead that an employer regards an employee as handicapped in his or her ability to work by finding the employee's impairment to foreclose generally the type of employment involved.").