UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-10704
_____

PHYLLIS ELLISON,

Plaintiff-Appellant,

versus

SOFTWARE SPECTRUM, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:94-CV-2068-R)
_____

May 30, 1996

Before BARKSDALE, DeMOSS, and PARKER, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Phyllis Ellison, who was treated for breast cancer, challenges the summary judgment granted her employer, Software Spectrum, Inc. (SSI), on her Americans with Disabilities Act (ADA) claim, contending, *inter alia*, that a material fact issue exists on whether she had the requisite "disability" under the ADA, 42 U.S.C. § 12102(2).  Concluding otherwise, we **AFFIRM**.

I.

In January 1992, Ellison was employed as a "returns person" in SSI's Product Operations Department, after having worked there for two years as a temporary employee.  The next January, when the returns position was eliminated, Ellison became a salaried buyer in

the same department.  She received a six percent raise after her January 1993 performance review.

In August 1993, Ellison learned that she had breast cancer, immediately had a lumpectomy, and received daily radiation treatment from mid-September through that October.  She did not miss work while undergoing treatment but, at her request, SSI allowed her to work on a modified schedule.  She arrived at work at 10:30 a.m. following her radiation therapy, skipped her lunch hour and morning break, and took work home.  Improving steadily after the treatment ended, Ellison felt "back to normal" by February 1994.

Ellison received a lower evaluation on her January 1994 performance review, and received only a three percent raise; the company average was five percent.  And, in early 1994, SSI decided to reduce the number of employees in Ellison's department from 35 to 31, effective that April.  Three positions were eliminated, the number of buyers was reduced from eight to six, and a returns position was created.  John Logan, Ellison's supervisor, and Jim Duster, Director of the Product Operations Department, evaluated and ranked each of the 35 employees.  On March 2, Ellison and three other employees were informed that they had 30 days to find other positions in the company or leave.  A vacancy developed for the returns position, however; based on her rating, Ellison was next in line for it.  She was offered the position and accepted it in mid-March.

Five months later, Ellison filed suit in state court against SSI, claiming violations of the ADA and the Family Medical Leave Act (FMLA), as well as intentional infliction of emotional distress under state law. After SSI removed the action to federal court, Ellison amended her complaint to add an ERISA claim. The district court granted summary judgment for SSI on all but the FMLA claim, and entered a Rule 54(b) judgment for the ADA, ERISA, and emotional distress claims.

## II.

Ellison contests the summary judgment only on her ADA claim. As is well known, we review a summary judgment *de novo*, applying the same standard as the district court: factual issues are considered in the light most favorable to the nonmovant, and the "judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law". *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 (5th Cir. 1995); FED. R. CIV. P. 56. "[T]he substantive law will identify which facts are material", and "[a] dispute about a material fact is `genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party". *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

For the ADA claim, the court held that Ellison's breast cancer was not a requisite "disability" within the meaning of the ADA. Therefore, it did not rule on the other elements of that claim. (Likewise, because we conclude that summary judgment as to disability is proper, we need not reach those other elements,

eliminating also the sub-issue of whether to remand for the district court to consider them first.)

The ADA defines "disability" using three alternatives:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). It is undisputed that Ellison's cancer was an "impairment".[1] Because she claims that a material fact issue exists for each of the three § 12102(2) alternatives, we will examine each subpart in turn.

### A.

Subpart (A) concerns whether Ellison's impairment "substantially limit[ed]" one or more of her "major life activities". Although the ADA does not define "substantially limits" and "major life activities", the regulations promulgated by the Equal Employment Opportunity Commission "provide significant guidance". *Dutcher*, 53 F.3d at 726. They state that "[m]ajor life

---

[1] Regulations promulgated by the Equal Employment Opportunity Commission define a physical impairment as:

> Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine ....

29 C.F.R. § 1630.2(h)(1).

activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working".  29 C.F.R. § 1630.2(i).  In district court, "working" is the only major life activity for which Ellison claimed a substantial limitation.[2]

The regulations provide that whether an impairment substantially limits a major life activity is determined in light of

> (i)  The nature and severity of the impairment;
>
> (ii)   The duration or expected duration of the impairment; and
>
> (iii)  The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).  And, for the major life activity of "working", the regulations provide that

> (i)  The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.
>
> (ii)   In addition to the factors listed in paragraph (j)(2) of this section [quoted above], the following factors may be considered in determining whether an

---

[2]    Here, as discussed *infra* in this part, Ellison asserts that all major life activities would have been substantially limited, as part of her contention that her cancer treatment is irrelevant to whether the cancer was an ADA disability.  As also discussed *infra*, because this was not raised in district court, we do not consider major life activities other than working.

individual is substantially limited in the major life activity of "working":

(A) The geographical area to which the individual has reasonable access;

(B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or

(C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3). As hereinafter discussed, in light of the statute and these regulations, a material fact issue does not exist for this subpart.

In support of its summary judgment motion, SSI submitted the affidavit of Duster, the Product Operations Department director; he stated that no special accommodations were necessary for Ellison, and that at all times, she had demonstrated the physical and mental ability to work. SSI also submitted excerpts from Ellison's deposition; she testified that the radiation treatment made her nauseous and tired and she suffered an allergic reaction to the radiation which caused painful swelling and inflammation, but that the treatment did not affect her ability to do her job and she never missed a day of work. She testified further that her normal workday was seven and one-half hours; that she was able to work

almost that amount while receiving treatment, by working from 10:30 a.m. until 6:00 p.m., with no lunch and only an afternoon break; and that she improved steadily after the radiation treatment was completed, and was back to normal in three or four months (by February 1994).

In opposition, Ellison submitted her physician's deposition; he stated that cancer can cause death if not treated and causes emotional distress from the fear that it will return. She submitted also the deposition of her former supervisor, Logan; he stated that Ellison was not as effective at work, and that the quality of her work suffered while she was receiving radiation treatment. And, in her affidavit, Ellison detailed the nausea, fatigue, swelling, inflammation, and pain she experienced as a result of the treatment and the medication she was given for her allergic reaction to the radiation, but stated that, although she constantly felt sick and fatigued, she "could perform [her] essential job responsibilities ... so long as [SSI] allowed [her] the accommodation of a modified work schedule so that [she] could attend appointments with [her] doctors and receive [her] treatments".

As stated, the summary judgment evidence, viewed in the light most favorable to Ellison, does not create a material fact issue on whether her cancer and treatment "substantially limited" her major life activity of working. Obviously, her ability to work was

affected; but, as reflected in the above-quoted statute and regulations, far more is required to trigger coverage under § 12102(2)(A).

Along this line, Ellison contends that it is irrelevant both that SSI made reasonable accommodations in her work schedule and that her cancer was treated successfully. In support, citing 29 C.F.R. Pt. 1630, App. § 1630.2(h) (the appendix is the EEOC's "Interpretive Guidance" to the ADA), she asserts that "ADA regulations require that the existence of one's disability be determined without regard to the effects of mitigating measures such as drugs or prosthesis", and maintains that acceptance of a contrary position would both "punish employees for seeking reasonable accommodations in order to continue working instead of taking medical leave" and "undermine the salutary purpose of the ADA by discouraging, rather than encouraging, gainful employment".

Ellison did not present this contention in district court; therefore, we will not consider it. *See, e.g., **Stults v. Conoco, Inc.**,* 76 F.3d 651, 657 (5th Cir. 1996) (internal quotation marks and citation omitted) ("[a]lthough on summary judgment the record is reviewed *de novo*, this court for obvious reasons, will not consider evidence or arguments that were not presented to the district court for its consideration in ruling on the motion").[3]

---

[3]    As noted, the appendix is not part of the regulations, but is, instead, the EEOC's interpretation of those regulations. *See* 29 C.F.R. Pt. 1630, App., Introduction. Furthermore, the part Ellison relies on addresses *impairment*, not *disability*, stating that

> [t]he existence of an *impairment* is to be
> determined without regard to mitigating

- 8 -

Concerning subpart (B) of § 12102(2), Ellison maintains that a material fact issue exists on whether she had a "record" of having a substantially limiting impairment. The regulations state:

> *Has a record of such impairment* means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.

29 C.F.R. § 1630.2(k).

SSI presented the affidavit of Celia Boynton, Employee Relations Representative in its Human Resources Department; she stated that nothing in Ellison's personnel file has ever indicated that she was substantially limited by a physical or mental impairment either in her ability to perform her job or in any other

---

measures such as medicines, or assistive or prosthetic devices.... For example, an
individual with epilepsy would be considered to have an impairment even if the symptoms of the disorder were completely controlled by medicine. Similarly, an individual with hearing loss would be considered to have an impairment even if the condition were correctable through the use of a hearing aid.

29 C.F.R. Pt. 1630, App. § 1630.2(h) (emphasis added). Again, it is undisputed that Ellison's cancer was an impairment; but, "[a] physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA [because t]he statute requires an impairment that substantially limits one or more of the major life activities". *Dutcher*, 53 F.3d at 726.

We recognize, consistent with Ellison's contention, that App. § 1630.2(j) does provide that "[t]he determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis, without regard to mitigating measures such as medicines, or assistive or prosthetic devices". 29 C.F.R. Pt. 1630, App. § 1630.2(j). Arguably, on the other hand, had Congress intended that substantial limitation be determined without regard to mitigating measures, it would have provided for coverage under § 12102(2)(A) for impairments that have the *potential* to substantially limit a major life activity.

respect. Ellison did not present any evidence to counter that affidavit. Moreover, contrary to the alternative position advanced by Ellison, SSI's acquiescence in her modified schedule to accommodate her treatment does not create a material fact issue on whether she had the requisite record, in that she did not miss a day of work and her ability to work was not substantially limited.

C.

Finally, Ellison relies upon subpart (C) ("regarded as having such an impairment"), asserting that SSI's comments to, and about, her create a material fact issue on whether it regarded her cancer as a substantial limitation on her ability to work. The EEOC regulations define "regarded as having such an impairment" as follows:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l).

As noted, an employer does not necessarily regard an employee as having a substantially limiting impairment simply because it believes she is incapable of performing a particular job; "[t]he statutory reference to a substantial limitation indicates instead that an employer regards an employee as [substantially limited] in

- 10 -

his or her ability to work by finding the employee's impairment to foreclose generally the type of employment involved". *Forrisi v. Bowen*, 794 F.2d 931, 935 (4th Cir. 1986); *see also* 29 C.F.R. § 1630.2(j)(3)(i).[4]

In claiming that SSI regarded her cancer as a substantially limiting impairment, Ellison relies on four comments by her supervisor, Logan. The first three fall far short of creating a material fact issue.

First, when Ellison informed Logan that she needed a modified work schedule in order to receive daily radiation treatment, Logan expressed his irritation by suggesting that she get a mastectomy instead because her breasts were not worth saving.

Second, when Ellison suffered from nausea after returning from a treatment, Logan asked her where she had been; a co-worker explained that Ellison had been in the restroom because she was sick. When Ellison stated that she got sick every time she thought of eating or drinking, Logan responded that it had not affected her weight.

Third, upon Ellison arriving at work following a radiation treatment, a power outage occurred at SSI; the employees were told to evacuate the building. When employees responded that they could

---

[4]    Although *Forrisi* concerns a claim under a similar provision of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, "the substantial equivalency of the definition of disability under the Rehabilitation Act and the ADA strongly suggests that prior constructions of the Rehabilitation Act should be generally applicable in construing the ADA definition of `disability'". *Dutcher*, 53 F.3d at 727 n.14. *Dutcher* cites the above-quoted portion of *Forrisi* with approval. *Id.* at 728 n.20.

not see because it was dark, Logan laughed and said, "[D]on't worry about it.   Follow Phyllis ... see, look over there.   She's glowing."

It goes without saying that these comments are beneath contempt (when deposed, Logan was no longer employed by SSI); but, as stated, they do not create a material fact issue on whether SSI regarded Ellison as having a substantially limiting impairment. The final comment, however, presents a closer question.

During a meeting in 1994, in which the departmental reduction was discussed, a member of the human resources department asked whether any of the potentially affected employees had special circumstances that needed to be considered; Logan responded, "Phyllis has cancer".  Ellison maintains that the remark creates a material fact issue on whether SSI's decision to discharge her was based on its perception that she had cancer.  SSI counters that the remark reflects nothing more than its awareness of Ellison's cancer and, in fact, could be interpreted as a request that she be given special consideration in determining which employees would be affected by the reduction.

We must consider this comment in the light most favorable to Ellison, but we cannot do so in isolation.  As noted, when the returns position became open, it was offered to Ellison and she accepted it.  And, as stated in her deposition, she continues to earn the same salary, to be eligible for the pay on performance plan, and to receive the same employee benefits.  The fact that SSI offered Ellison another position in the company, as well as the

fact that three other employees, in addition to Ellison, were affected by the reduction, precludes there being a material fact issue as to whether Ellison was included in the affected group because SSI "regarded [her] as having ... [a substantially limiting] impairment".

                              III.

    For the foregoing reasons, the judgment on Ellison's ADA claim is

                          **AFFIRMED**.