UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-30259
_____


DOROTHY A. DEASON,

    Plaintiff - Appellant,


VERSUS


DUKE ENERGY TRUNKLINE LNG; CMS ENERGY TRUNKLINE LNG,

    Defendants - Appellees.


_____

Appeal from the United States District Court
For the Western District of Louisiana, Lake Charles
99-CV-2110
March 20, 2002
_____

Before ALDISERT[1], DAVIS, and PARKER, Circuit Judges.

PER CURIAM[*]:

    This is an appeal of the district court's grant of summary

judgment on behalf of defendants Duke Energy/Trunkline LNG ("Duke")

---

[1] Circuit Judge of the Third Circuit Court of Appeals, sitting by designation.

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

and CMS Energy/Trunkline LNG ("CMS").

## I.  PROCEEDINGS IN THE DISTRICT COURT

Dorothy A. Deason ("Deason") filed her original complaint in the 14th Judicial Court of Calcasieu Parish, Louisiana, on October 20, 1999.  She alleged that she had been illegally terminated because of a disability, that she had been subjected to sexual harassment and racial epithets by her employer and that her illegal termination was retaliatory because of her harassment complaints and for seeking long-term disability benefits.  In addition, she claimed that the defendants had intentionally inflicted emotional distress upon her.  She made all of her claims under various Louisiana state statutes.

Duke and CMS removed the complaint to federal district court on November 17, 1999, under 28 U.S.C. § 1332, federal diversity jurisdiction.  Deason filed a complaint dated November 9, 1999, with the Equal Employment Opportunity Commission ("EEOC") and the Louisiana Commission on Human Rights, alleging employment discrimination on the basis of disability (but not race).  The EEOC closed its file on December 14, 1999, because Deason's "allegations did not involve a disability that is covered by the Americans with Disabilities Act."  The EEOC did issue a "right to sue" letter.  The district court granted Deason leave to file an amended complaint, which she did on March 14, 2000, alleging her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e,

2

*et. seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, *et. seq.*, and 42 U.S.C. § 1981. She retained her retaliation and emotional distress claims under Louisiana state law.

CMS and Duke moved, separately, for summary judgment. CMS argued that there was no evidence that it was ever Deason's employer. Duke argued that Deason had not stated a claim under the ADA, that her harassment complaints were proscribed, that her retaliation claim had been abandoned and that she failed to establish a claim of emotional distress. On January 23, 2001, the district court entered a memorandum ruling which granted summary judgment to both Duke and CMS.

## II.  BACKGROUND

Deason began work with Trunkline LNG, then a Duke division, in March 1989. She rose from the position of Controller "C" to Controller "A" while so employed.

On two occasions, Deason either discussed or complained of having heard sexually oriented comments and racial epithets with Duke's Site Manager, David Cobb. Those occasions were in 1994 and 1996. The record is unclear whether any of the comments were directed toward Deason herself. She does not assert that she took any other action and has provided no supporting evidence.

On August 12, 1998, she underwent a hysterectomy and was not released by her doctor to return to work until October 15, 1998.

3

Upon being released to return to work, Duke Energy required Deason to undergo a Functional Capacity Evaluation (FCE) before resuming her duties. While completing the FCE, Deason tore a rotator cuff, which required surgery in November 1998 followed by physical therapy. She was released to return to work in August 1999 with a ten percent residual disability. From August 1998 to August 1999, Deason received either short or long-term disability leave and compensation as a Duke employee.

During this time, Duke and CMS entered negotiations for CMS to purchase the Trunkline LNG operation from Duke. The impending sale was announced to Duke's employees and Deason was informed of the sale in November 1998. One of the terms of the sale was that any individual who was out on long-term disability at the time of the sale would be retained by Duke and would not become a CMS employee. The sale was completed in March 1999. Deason asserts she did not learn of the exclusion clause and her status as a retained employee until May 1999. She remained a Duke employee and continued to receive long-term disability compensation and leave until she was released to return to work in August 1999.

Upon Deason's return, Duke offered her another job as an offshore Utility Pipeliner at her Controller "A" rate of pay of $23 an hour although the Utility Pipeliner job normally paid less. She refused that offer for two reasons: first, taking the job would have required her to be separated from her terminally ill son for

4

up to three weeks at a time and, second, the job required training in downed helicopter evacuation in the water and she did not swim. She was offered a severance package in the alternative, which amounted to a lump sum of $42,350. She refused that alternative as well, and commenced this lawsuit. She alleged that Duke had constructive knowledge of her personal situation which it knew would preclude her from taking the job accommodation and that Duke's actions were aimed at her termination in retaliation for her earlier complaints and for her disability claims. She further alleged that CMS is liable as a successor employer.

Deason now appeals the district court's ruling and raises five issues on appeal: whether the district court erred by (1) determining that she was neither disabled nor regarded as disabled by Duke and CMS as defined by the ADA; (2) finding that the alternative job offered by Duke was a reasonable accommodation under the ADA; (3) determining that she had not suffered an adverse employment action based on the exclusion clause in the terms of the sale of the Trunkline LNG division from Duke to CMS; (4) finding that CMS never employed her; and (5) finding that Duke did not retaliate against her for her complaints of racial and sexual harassment and disability discrimination under Louisiana Revised Statute 51:2256, *et. seq.*

## III. STANDARD OF REVIEW

This court conducts a *de novo* review of a grant of summary

judgment, ensuring that no genuine issue of material fact exists and that judgment in favor of the appellee was warranted as a matter of law. *See Haynes v. Pennzoil Co.*, 207 F.3d 296, 299 (5th Cir. 2000). Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-movant, reflects no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986); *Hall v. Gillman, Inc.*, 81 F.3d 35, 36-37 (5th Cir. 1996).

## IV. ANALYSIS

In order to establish a *prima facie* case of discrimination under the ADA, Deason must demonstrate that: (1) she has a disability; (2) she is a qualified individual for the job in question; and (3) that an adverse employment decision was made solely because of her disability. *See Still v. Freeport-McMoran, Inc.*, 120 F.3d 50, 51 (5th Cir. 1997).

## A. Disability

The parties dispute whether Deason's rotator cuff injury[2]

---

[2] Deason's earlier hysterectomy, which first placed her on either short or long-term disability status with Duke, is not the subject of her disability claim here. She recovered fully from that surgery. The only disability she asserts to be limiting under the ADA is the residual disability from her rotator cuff surgery. As a result of that surgery, she develops pain when working overhead for an extended period of time and has a limited range of motion behind her back, restricting, for example, her ability to wash herself or to close a brassiere.

6

constituted an ADA disability, either while she was on long-term disability or after she was medically released to return to duty (albeit with a ten percent residual disability). The district court applied the ADA's definition of a "disability" under 42 U.S.C. § 12102(1)[3] to determine that Deason's rotator cuff condition did not substantially limit any of her major life activities. The district court also determined that Deason did not have a record of being substantially limited in a major life activity and was not regarded by Duke as being substantially limited in a major life activity. Therefore, the district court found that Deason failed to state a *prima facie* claim under the ADA. Although we generally agree with the district court's "disability" determination, the rationale for this determination needs to be further explained based upon Deason's theory of the case.[4]

Deason contends that the relevant date for determining whether she was disabled for purposes of the ADA was the date of the adverse employment action. In her view, the adverse employment

---

[3] A disability under the ADA is (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such impairment. 42 U.S.C. § 12102(1).

[4] We agree with the district court's reasons for finding that Deason did not have a record of such impairment and was not regarded as having such an impairment. Therefore, we will only delve into whether Deason's rotator cuff condition substantially limited her in one or more of the major life activities.

7

action occurred on March 29, 1999 when Duke sold its LNG Trunkline Division to CMS. Therefore, whether or not she was substantially limited in any major life activity, must be evaluated by looking to her rotator cuff condition as it existed on March 29, 1999.

Deason correctly asserts that the "substantially limited" inquiry[5] must be made by looking to the nature and severity of the condition as it existed at the time of the adverse employment action, the parties' expectations at the time of the adverse employment action concerning whether the condition would improve or fully heal, and the parties' expectations at the time of the adverse employment action concerning the long-term impact of the condition. *See Eber v. Harris County Hospital Dist.*, 130 F. Supp. 2d 847, 858 (S.D. Tex. 2001) ("[a]n ADA claimant must prove that he was disabled at the time of the alleged discriminatory act").

The district court reasoned that Deason had not made a prima facie case of disability because: (1) her rotator cuff injury was nearly completely healed by September 1999[6]; and (2) Deason's doctor released her to go back to work without restrictions on

---

[5] The EEOC regulations instruct that the following factors be considered in determining whether an individual is substantially limited in a major life activity: "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment." 29 C.F.R. §§ 1630.2(j)(2)(i)-(iii) (2001).

[6] The district court noted that after completion of physical therapy Deason still had a 10% residual disability which prevented her from working over her head for extended periods of time.

8

August 24, 1999. Although the district court did not specifically address how the parties' viewed the rotator cuff impairment on March 29, 1999, we find ample evidence in the record to suggest that both parties believed in March 1999 that Deason would recover from the rotator cuff condition and return to work at Duke. Therefore, evaluating her alleged disability as of March 1999, we still find that Deason did not make out a prima facie case of disability.[7]

As would be expected when one undergoes shoulder surgery, Deason still has lingering stiffness in the shoulder area and may have difficulty working overhead for extended periods of time. However, her own testimony indicates that the shoulder injury only affects her ability to care for herself a little bit (she is dependent on bra closure). As a matter of law, this type of slight limitation does not substantially limit her in the major life activity of caring for herself.

Neither can we accept Deason's argument that being unable to work for extended periods of time overhead makes her substantially limited in the major life activities of performing manual tasks or working. The United States Supreme Court's most recent ADA decision forecloses Deason's "manual tasks" argument. *See Toyota*

---

[7] Because we find that Deason has not raised a genuine issue of material fact concerning whether she was disabled under the ADA, the second, third, and fourth issues which she raises in this appeal are moot and will not be addressed.

9

*Motor Manufacturing Kentucky, Inc. v. Williams*, 122 S. Ct. 681, 693 (2002)(repetitive work with hands and arms extended at or above shoulder level for extended periods of time is not an important part of most people's daily lives and therefore is not sufficient proof that an individual is substantially limited in performing manual tasks).

Deason's contention that she is substantially limited in the major life activity of working is similarly unpersuasive under both the EEOC regulations and our Circuit's jurisprudence because, despite her shoulder problem, she can still perform a class of jobs or a broad range of jobs. *See* 29 C.F.R. § 1630.2(j)(3) (2001)("With respect to the major life activity of *working*, the term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities"); *see also Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 727 (5th Cir. 1995)("inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to substantial limitation of the activity of working."). *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir. 1996) (plaintiff's inability to perform continuous heavy lifting did not constitute a substantial limitation on a major life activity); *Pryor v. Trane Company*, 138 F.3d 1024, 1027 (5th Cir. 1998) (upholding jury determination that individual who could not

10

perform continuous lifting from shoulder to overhead and ability to push and pull was below average was not substantially limited in a major life activity). Indeed, Deason contends that she could have performed her old Controller "A" job at Duke despite her shoulder condition. Further, while she claims she could not have performed the job offered to her by Duke in September 1999, the Utility Pipeliner position, the reasons for her inability to do so are unrelated to her shoulder condition.

## B. Retaliation

Deason claims that Duke retaliated against her because she had previously made discrimination complaints. She suggests that Duke retaliated in three ways. First, Duke did not tell her about the buyout provision until six weeks after the sale became final. Second, Duke did not transfer her over to CMS at the time of sale. Third, Duke did not provide COBRA benefits information to her in a timely fashion.

Deason has abandoned any claim under Title VII but has couched her retaliation claim under Louisiana anti-retaliation statutes. The analysis of a retaliation claim following a complaint of sexual harassment and the use of racial epithets is the same under Louisiana law as it is under Title VII. *See McMillon v. Corridan*, No. 97-3981, 1998 U.S. Dist. LEXIS 13958, at *8-9 (E.D. La. Aug. 31, 1998). To prevail on a claim of retaliation under Title VII and hence Louisiana law, Deason must show that: (1) she engaged in

11

a protected activity; (2) an adverse employment action occurred; and (3) a causal connection existed between the protected activity and the adverse employment action. *Dollis v. Rubin,* 77 F.3d 777, 781 (5th Cir. 1995).

In our view, Duke's delays in informing Deason about the buyout provision and sending her the COBRA benefits information do not constitute an adverse employment action under our case law because they do not concern "ultimate employment decisions." *Dollis*, 77 F.3d at 781-82. On the other hand, whether Duke's retaining of Deason pursuant to the exclusionary terms of the long-term disability buyout provision and subsequent offer of a new position to Deason at her former salary constitutes an adverse employment action under our case law is less than crystal clear. Fortunately, however, we need not decide this issue because, irrespective of the adverse employment action prong, Deason has not presented sufficient evidence on the "causal connection" prong to survive summary judgment on her retaliation claim.[8]

---

[8] At the prima facie stage, the proof required to raise a fact issue on the "causal connection" prong is not as stringent as the "but for" standard. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001). Applying this lesser standard, we still find that Deason has not raised a fact issue on this final prong for two reasons. First, a three year time gap exists between her discrimination complaints and the alleged adverse employment actions. There is no indication that Duke treated Deason unfairly or attempted to retaliate against her during this three year period. Second, the mere fact that Deason was the only employee caught in the snares of the long-term disability buyout provision does not lead to a reasonable inference that Duke devised the provision to punish Deason for her past complaints.

**V. CONCLUSION**

In sum, Deason has not raised a genuine issue of material fact concerning whether she had an ADA disability. Neither has she presented sufficient summary judgment evidence to raise a fact issue concerning whether Duke retaliated against her for making past discrimination complaints. Therefore, her ADA claims against Duke and CMS and retaliation claim against Duke fail as a matter of law. The judgment of the district court is hereby AFFIRMED in all respects.

AFFIRMED.