United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 18, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-10588
_____

BERNARD W. HENSON

Plaintiff-Appellant

versus

BELL HELICOPTER TEXTRON, INC.

Defendant-Appellee

_____
Appeal from the United States District Court
for the Northern District of Texas
(4:01-CV-1024-Y)
_____

Before SMITH, DENNIS, and PRADO, Circuit Judges.


PER CURIAM:[*]

Plaintiff-Appellant Henson is an African-American male who was hired by Bell Helicopter ("Bell") as a firefighter in September, 1993. During the time that he worked for Bell, Henson was a member of the Security Police Fire Professionals of America and Amalgamated Local No. 256 (the "union"), and his employment was governed by a collective bargaining agreement between Bell and the union.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

In 1999, Henson sought counseling from Bell's Employee Assistance Program for family problems he was experiencing. Henson's immediate supervisor, Chief Larry Smith, agreed to allow Henson to report late in the months of April and May of 1999 so Henson could attend counseling sessions because of family problems he was experiencing. At the end of that period Chief Smith did not allow Henson to continue further counseling or attend the full counseling session, which lasted from 10:00 a.m. to 3:00 p.m.

On June 8, 1999, Henson took leave under the Family Medical Leave Act ("FMLA") to have surgery on his toes, and was released back to work on July 21, 1999, with restrictions on lifting, walking, and bending. Henson requested that Chief Smith provide him with desk duty for two weeks. Because one of Henson's duties involved inspecting buildings, however, Chief Smith informed Henson that he could not accommodate his walking restrictions other than permit Henson to sit down between inspections.

From the beginning of Henson's employment at Bell, Chief Smith counseled him regarding problems with his absenteeism and tardiness. Under Bell's attendance policy, an employee's "lost time" could not exceed 64 hours in any one twelve-month period or the employee was subject to disciplinary action. Lost time for (1) holidays, (2) vacation, (3) bereavement, (4) jury duty, (5) disciplinary times off, (6) approved union business, (7) approved education leave, (8) approved military leave, (9) approved personal

2

leave, (10) Family Medical Leave Act leave, and (11) temporary layoffs were not included in the 64-hour limit.

From January 31, 1998 to January 31, 1999, Henson's lost time was 65.9 hours after all applicable leaves were excluded, and on February 1, 1999, Deputy Chief Roy Eaves verbally counseled Henson about his absenteeism. Between January 31, 1999 and April 29, 1999, Henson was late, left early, or was absent on twenty additional days. In both October 1999 and December 1999, Henson's supervisors further counseled him for his absenteeism. As of January 30, 2000, Henson had been absent 90.6 hours excluding the sick leave, military leave, and extended Family Medical Leave Act leave that he had taken in 1999. On February 9, 2000, Chief Smith gave Henson a written reprimand for his excessive absenteeism. From February 9, 2000 to May 23, 2000, Henson was late on thirteen different days, resulting in an additional 5.4 hours of lost time.

On top of Henson's tardiness and absenteeism, from January 2000 to May 2000, Henson apparently frequently left the facility while on duty. On at least eleven occasions, Henson was away from the facility during his shift for between ten minutes and an hour and a half.

On May 23, 2000, Bell held a disciplinary hearing and Henson was discharged for excessive absenteeism and dereliction of duty. After Henson was discharged from duty, Henson's union representatives negotiated with Bell, and the parties agreed to change Henson's penalty from discharge to a suspension without pay.

3

Henson was reinstated on July 17, 2000. Between July 18, 2000 and September 19, 2000, Henson was late a total of twelve times. According to Bell's records, no other employee that ever worked in the Fire Department at Bell had absenteeism problems approaching the magnitude of Henson's problem. On September 20, 2000, Bell held a disciplinary hearing and again terminated Henson for his absenteeism.

Henson filed the charge of discrimination at issue here with the EEOC on January 22, 2001. The EEOC issued a right to sue letter, and Henson filed suit against Bell asserting claims of race discrimination and retaliation under Title VII, disability discrimination under the Americans with Disabilities Act ("ADA"), and violation of the FMLA. The district court granted summary judgment for Bell Helicopter on all claims, and Henson timely appeals. We affirm the district court's grant of summary judgment for Bell Helicopter.

## ANALYSIS

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. Evans v. City of Houston, 246 F.3d 344, 347 (5th Cir. 2001). Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56.

Henson's complaint alleges causes of action under Title VII, the ADA, and the FMLA, and his notice of appeal also refers to all

4

three claims. Henson's brief on appeal, however, abandons his claim of race discrimination and retaliation under Title VII. Although the brief mentions Title VII, Henson does not make any argument that the district court erred in its disposition of his Title VII claim or even mention any alleged instances of racial discrimination. He argues only that there are material issues of fact relating to his ADA and FMLA claims. Accordingly, we address only Henson's ADA and FMLA claims. Webb v. Investacorp Inc., 89 F.3d 252, 257 n. 2 (5th Cir. 1996).

## I. ADA Claim

The district court held that Henson's allegations that Bell discriminated against him in violation of the ADA, arising from alleged acts that occurred prior to March 29, 2000, were time barred. Disposing of the allegations arising from later acts, the court held that Henson was not a qualified individual with a disability protected under the ADA. We agree.

### A.

The ADA incorporates by reference the two-step administrative and judicial enforcement scheme of Title VII of the 1964 Civil Rights Act. See 42 U.S.C. § 12117(a). Thus, before a plaintiff may file a civil action under Title VII or the ADA, he must exhaust administrative remedies, which include filing a charge of discrimination with the EEOC within 300 days after the alleged violations occurred and filing suit within 90 days after receiving a right-to-sue letter from the EEOC. See 42 U.S.C. § 2000e-5(b),

5

(e), (f); 42 U.S.C. § 12117. Because Henson had not demonstrated an equitable basis for modifying this requirement, the district court did not consider Henson's claims that occurred before March 29, 2000, which is 300 days prior to January 22, 2001, the date on which Henson filed a charge of discrimination with the EEOC. On appeal, Henson argues that the district court erred by not considering his argument that the alleged discriminatory acts involved a "continuing violation."

Under the continuing violation doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period. Felton v. Polles, 315 F.3d 470, 487 (5th Cir. 2002). The Supreme Court has clarified, however, that discrete discriminatory acts are not actionable if time barred, even when they are related to acts complained of in timely filed charges. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002).

Henson argues that because Bell relied on Henson's absences beginning in 1999 to make the decision to discharge him in 2000, the district court should have considered Bell's actions during that period under a continuing violation theory. But Henson does not allege any actual related or continuing acts of discrimination by Bell. The only incidents he complains of that happened prior to March 29, 2000, are: (1) Chief Smith's failure to provide

6

accommodations to allow Henson to continue his Employee Assistance Program ("EAP") counseling sessions, (2) Chief Smith's refusal to excuse Henson from walking duties for two weeks after he had toe surgery in 1999, and (3) Bell's refusal to grant Henson's shift transfer requests. Because all of those incidents are discrete acts, they do not qualify under the continuing violation exception to the ADA's actionable period restrictions and the district court properly limited its inquiry to Henson's allegations of ADA violations that occurred after March 29, 2000.

B.

Henson next argues that Bell violated the ADA when it fired him because of his depression, which he claims is a protected disability under the ADA. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 1211(8).

The ADA defines a disability as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or

7

(C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). "Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." <u>Dutcher v. Ingalls Shipbuilding</u>, 53 F.3d 723, 726 (5th Cir. 1995)(quoting 29 C.F.R. § 1630.2(I)). The factors to be considered in determining whether an impairment substantially limits a major life activity include: (1) the nature and severity of the impairment; (2) its duration or expected duration; and (3) its permanent or expected permanent long-term impact. 29 C.F.R. § 1630.2(j)(2)(i)-(iii).

The district court found that Henson was not a "qualified individual with a disability" under the ADA. Although Henson argues that the district court erred when it found that he was not disabled under the first prong (having a physical or mental impairment that substantially limits one or more of the major life activities of such individual), he makes no argument of how his depression was actually an "impairment that substantially limits" the "major life activities" of working and learning, and therefore relies on the second and third "record of impairment" and "regarded as impaired" prongs.

The "record of such impairment" prong applies where an individual "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." <u>Burch v. Coca-Cola Co.</u>, 119 F.3d 305, 321 (5th Cir. 1997) (quoting 29 C.F.R. § 1630.2(k)). Again,

8

however, Henson does not point to any "substantial limit" that his depression places on his ability to do work and points to no record establishing a history of depression.

Henson's argument thus relies on the third prong of the definition of disability under the ADA, that is, that Bell "regarded" Henson as disabled. Under the ADA, to be "regarded as" disabled by his employer, a plaintiff must:

> (1) have a physical or mental impairment that does not substantially limit major life activities, but be treated as such by an employer; (2) have a physical or mental impairment that substantially limits one or more major life activities, but only because of the attitudes of others towards the impairment; or (3) have no impairment at all but be treated by an employer as having a substantially limiting impairment.

McInnis v. Alamo Comm. College Dist., 207 F.3d 276, 281 (5th Cir. 2000). The summary judgment evidence presented shows, however, that: (1) Henson never told Chief Smith that he was suffering from depression or any other mental condition, (2) Henson never requested any type of leave for depression or any other mental condition, and (3) Henson never informed Chief Smith that he was late for work because he suffered from depression. To show that Bell regarded him as disabled within the meaning of the ADA, Henson relies exclusively on the fact that Chief Smith allowed him to attend EAP counseling for two months in 1999. Because an employee's mere attendance at some form of counseling does not necessarily mean that a "major life activity" of the employee is "substantially limited," Chief Smith's allowing scheduling

9

adjustments for Henson to attend counseling during a two-month period does not mean that Smith regarded Bell as having a disability under the ADA. The district court was correct not to recognize Henson as disabled under the third prong and to grant summary judgment for Bell Helicopter on Henson's ADA claim.

## II. FMLA Claim

Henson next claims that Bell violated his rights under the FMLA by: (1) refusing to accommodate Henson's request in April 1999 to attend an outpatient counseling program, and (2) discharging Henson due to his excessive absences. The district court held that Henson's claims from 1999 were time barred and that Henson's absences were not protected leave under the FMLA. We agree.

### (A)

The statute of limitations for FMLA claims is three years for willful violations, 29 U.S.C. § 2617(c)(2), and two years for all other violations. 29 U.S.C. § 2617(c)(1). To establish a willful violation of the FMLA, a plaintiff must show that his employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 33 (1st Cir. 2003)(citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)). Henson argues that his claim from 1999 is not time barred because he presented evidence of Chief Smith's willful violation of the FMLA through the history of problems between himself and Chief Smith and Smith's "strict enforcement of Bell's absence policy" against Henson. To

10

make his argument, Henson relies on evidence that: (1) Chief Smith consistently counseled Henson regarding his problems with Bell's attendance policy; and eventually discharged Henson on the basis of his violation of that policy, and (2) Chief Smith was unable to make non-walking accommodations for Henson after his toe surgery because there were no positions that did not involve walking. Neither of those point establish a reckless disregard for whether strict enforcement of Bell's absence policy was a violation of the FMLA. Thus, because Henson filed his complaint against Bell in November 2001, Henson's claim that in April 1999 Bell failed to grant him leave under the FMLA so he could attend counseling sessions is not timely filed.

(B)

Henson also argues that Bell violated the FMLA by discharging him due to his excessive absences. For leave to be protected under the FMLA, an employee who requests leave due to a "serious health condition" must provide his employer with at least 30 days notice before the date of leave is to begin, or if the leave is required to begin in less than 30 days, to provide such notice as is practicable. 29 U.S.C. § 2612(e)(2)(B). Here, throughout the period that Henson alleges his tardiness and absence from work was due to his depression, Henson never gave Bell any notice of when he would miss work and Henson admits that he was absent for a variety of reasons. Chief Smith apparently was aware only that Henson

11

explained his absences as being the result of traffic or personal business, and had not been told about any "serious health condition." Because Henson gave his employer absolutely no notice of his absences from work, they are not protected under the FMLA.

CONCLUSION

The district court properly granted summary judgment for Bell on all claims.

AFFIRMED.