Steve A. GALVAN, Plaintiff,

v.

CITY OF BRYAN, TEXAS, Defendant.

No. CIV.A. H–03–1576.

United States District Court,
S.D. Texas,
Houston Division.

July 15, 2004.

Disabilities Act ("ADA," "the Act"), 42 U.S.C. § 12101, *et. seq.,* and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et. seq.* Defendant asks the court for a judgment in its favor on all of those claims. (Defendant City of Bryan's Motion for Summary Judgment ["Defendant's Motion"], Docket Entry # 16). Plaintiff responded to that request, and Defendant was permitted to reply. (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ["Plaintiff's Response"], Docket Entry # 18; Defendant City of Bryan's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ["Defendant's Reply"], Docket Entry # 22). After a review of the motion, the evidence submitted, and the applicable law, it is ORDERED that Defendant's motion for summary judgment is GRANTED.

## Background

Plaintiff in this action, Steven A. Galvan, was employed by the city of Bryan, Texas, from 1991, until he was terminated on June 6, 2002. (Defendant's Motion, Exhibit ["Ex."] C: Oral Deposition of Steve Galvan at 13). Although he held several different positions during his tenure with the City, Galvan's lengthiest assignment was with the Solid Waste Services Department of Bryan's Environmental Services Division ("ESD"), where he was a "crew worker" in "Waste/Leaf collection operations [sic]." (Defendant's Motion at ¶ 3). In that position, he was required to ride on the back of a truck and load leaves and yard clippings into the truck's "rear end loader." (*Id.*).

In 2001, the Bryan city council directed ESD to provide additional services to residents, which included cleaning vacant lots, and collecting litter. (Plaintiff's Opposition, Ex. D: Deposition of Kelly Wellman at 24). Unfortunately, "[n]o funds were appropriated for the additional personnel

Sam E Rowland, Attorney at Law, Bryan, TX, for Plaintiff.

Janis Kennedy Hampton, City of Bryan, Michael John Cosentino, Bryan City Attorney's Office, Bryan, TX, for Defendant.

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MILLOY, United States Magistrate Judge.

On October 3, 2003, the parties consented to proceed before a United States Magistrate Judge, for all further proceedings, including trial and entry of final judgment, under 28 U.S.C. § 636(c). (Docket Entry # 9). In this action, Plaintiff Steve A. Galvan ("Plaintiff," "Galvan") claims that his former employer, the city of Bryan, Texas ("Defendant," "the City"), discriminated against him because he is disabled. For that reason, he has asserted claims against the City under the Americans with

required for the expanded services ... [l]eaving the Solid Waste Department charged with the task of increasing services to the citizenry with limited funds." (Defendant's Motion, Ex. E: Affidavit of Rick Conner at ¶ 23). For that reason, the City's Public Works Director and ESD's Division Manager created a "Maximization of Workforce Proposal," so that those services could be provided without a budget increase. Among other things, the proposal "eliminated all of the 'Crew Worker' position[s] and upgraded [them] to 'Equipment Operator.'" (Defendant's Motion at ¶ 5). It further required all Equipment Operators to become licensed commercial drivers, so that they could legally operate the heavy equipment used by other ESD departments. (*Id.*). On April 22, 2002, Galvan and a co-worker were informed that their positions were being eliminated, and that they must obtain the necessary license to work as Equipment Operators, or they would face termination. (Defendant's Motion at ¶ 6). Despite Plaintiff's repeated and sincere efforts, he was unable to pass the tests required to obtain the license. On June 6, 2002, his employment with the City was terminated. (*Id.*). Plaintiff now argues that he is ineligible for the necessary commercial driver's license, under state law, because he suffers from epilepsy. He claims further that he has learning disabilities which make it impossible for him to pass the licensing exam, even if he were otherwise eligible to acquire it. (Plaintiff's Response at ¶¶ 9, 15). Galvan alleges that the City knew his disabilities precluded his eligibility for the license, and that it created that requirement as a pretext for his termination. (*Id.* ¶ 17). He complains that it is his disabilities, and not the lack of a professional license, that led to his discharge.

Following his termination, Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that he had been dis-criminated against on the basis of his seizure disorder and his learning disabilities. The EEOC issued a right to sue letter on February 14, 2003, in which it informed Galvan that it would not pursue claims on his behalf because he was "not a qualified individual with a disability." (Plaintiff, Steve A. Galvan's Original Complaint ["Complaint"], Ex. 1: Dismissal and Notice of Rights, Docket Entry # 1). On May 9, 2003, Plaintiff filed this action, and repeated the allegations that he had made to the EEOC. In this suit, Galvan alleges that the city of Bryan violated his rights, under the ADA and Title VII, by firing him rather than making a reasonable accommodation to his disabilities. (*See* Complaint at 1).

In this motion, Defendant asks the court to grant judgment in its favor on all of Plaintiff's claims. Although the City acknowledges that Plaintiff has cognitive impairments, and does not dispute the diagnosis of epilepsy, it argues that he is not "disabled," as that term is defined by the ADA, and so, he is not entitled to that law's protection. (Defendant's Motion at 6). Defendant argues further that Galvan has no ADA claim against it because, even if he is disabled, he cannot perform an essential function of the job he seeks, and so, is not a "qualified individual with a disability," as required by the Act. (*Id.*). Finally, Defendant contends that an attempt to accommodate Galvan's disability, in this particular context, would create undue hardship, and so, it should not be required to do so. (*Id.* at 7). After a review of the pleadings, the undisputed evidence, and the relevant law, it is ORDERED that Defendant's motion for summary judgment is GRANTED, and the suit dismissed.

## Standard of Review

Summary judgment is appropriate if no genuine issue of material fact exists and

the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Norman v. Apache Corp.,* 19 F.3d 1017, 1023 (5th Cir.1994). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the non-movant's case. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *Id.* When the moving party has met its Rule 56 burden, the non-movant cannot survive a motion for summary judgment by resting merely on the allegations in it pleadings. *McCallum Highlands v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.1995). If the movant does meet his burden, the non-movant must go beyond the pleadings and designate specific facts to show that there is a genuine issue for trial. *Little,* 37 F.3d at 1075. Further, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Webb v. Cardiothoracic Surgery Assocs.,* 139 F.3d 532, 536 (5th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

To meet its burden, the nonmoving party must present "significant probative" evidence indicating that there are issues of fact remaining for trial. *Conkling v. Turner,* 18 F.3d 1285, 1295 (5th Cir.1994). If the evidence presented to rebut the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson v. Lib-* *erty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). But, in deciding a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* at 248, 106 S.Ct. 2505. However, "Rule 56 mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Little,* 37 F.3d at 1075.

## Discussion

### *Claims under the ADA*

#### *Epilepsy*

Galvan's first claim is that the city of Bryan discriminated against him when it altered his job requirements, as a pretext for discrimination, and then failed to accommodate his physical and mental disabilities, so that he could meet those new requirements. (Plaintiff's Complaint ¶¶ 6–7). For that reason, he seeks recovery under the ADA, which prohibits employers from "discriminat[ing] against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). The statute proscribes discrimination in "job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training and other terms, conditions and privileges of employment." *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir.1995); 42 U.S.C. § 12112(a). If an employee suffers from a recognized disability, the ADA requires "covered entities, including private employers, to provide 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employ-

ee, unless [it] can demonstrate that the accommodation would impose an undue hardship.'" *Toyota Motor.Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 193, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); 42 U.S.C. § 12112(b)(5)(A).

■■■ To establish a prima facie case of discrimination under the ADA, a plaintiff must show that he suffers from a disability, that he is qualified for the job in question, and that he was subjected to an adverse employment decision, which was based solely on his disability. *Talk v. Delta Airlines, Inc.,* 165 F.3d 1021, 1024 (5th Cir.1999); *Gonzales v. City of New Braunfels, Tex.,* 176 F.3d 834, 836 (5th Cir.1999); *Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1092 (5th Cir.1996) (per curiam); *and see* 42 U.S.C. § 12112(a). "As a threshold requirement in an ADA claim, the plaintiff must, of course, establish that he has a disability." *Waldrip v. General Electric Co.,* 325 F.3d 652, 654 (5th Cir.2003) (quoting *Rogers v. Int'l Marine Terminals, Inc.,* 87 F.3d 755, 758 (5th Cir.1996); *Blanks v. Southwestern Bell Communications, Inc.,* 310 F.3d 398, 400 (5th Cir.2002); *Mason v. United Air Lines, Inc.,* 274 F.3d 314, 316 (5th Cir.2001)). To do so, he must show that he suffers from "a physical or mental impairment that substantially limits one or more of [his] major life activities."[1] *See Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998); *Blanks,* 310 F.3d at 400; 42 U.S.C. § 12102(2). The United States Supreme Court has fashioned a three-part test to determine whether a disability exists under the ADA:

First, we consider whether ... a physical [or mental] impairment [exists].

Second, we identify the life activity upon which [the plaintiff] relies ... and determine whether it constitutes a major life activity under the ADA. Third, tying the two statutory phrases together, we ask whether the impairment substantially limited the major life activity.

*Bragdon,* 524 U.S. at 631, 118 S.Ct. 2196. Under the relevant regulations, promulgated by the EEOC, a person is deemed "substantially limited" if he cannot perform a major life activity, or if he is significantly restricted in the duration or manner in which he can perform it, as compared to an average person.[2] *See* 29 C.F.R. § 1630.2(j) (2001). Further, the cited limitation must be significant, not a "mere difference" in ability. *Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 565, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999). To determine whether a limitation is "substantial," the court may consider the nature and severity of an impairment; its duration or expected duration; and its permanent, long-term or expected impact. 29 C.F.R. §§ 1630.2(j)(2)(i)-(iii).

■■■ Before considering the merits of Galvan's claim, it is important to note that each of these terms has a precise definition, and must "be interpreted strictly to create a demanding standard for qualifying as disabled." *Waldrip,* 325 F.3d at 654 (quoting *Toyota,* 534 U.S. at 197, 122 S.Ct. 681). Indeed, the court must conduct a "rigorous and carefully individualized inquiry" into Galvan's claim that he is disabled, "to fulfill [its] 'statutory obligation to determine the existence of disabilities on a case-by-case basis.'" *Id.* (quoting *Kirkingburg,* 527 U.S. at 566, 119 S.Ct. 2162). Further,

---

**1.** A disability is also defined as a "record of such an impairment" or even being "regarded as having such an impairment." 42 U.S.C. § 12101(2). Plaintiff has not made either of those allegations in his suit.

**2.** 42 U.S.C. § 12116 authorizes the Equal Employment Opportunity Commission to issue regulations to further the purpose of the ADA. *Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800, 805 (5th Cir.1997).

[i]t is insufficient for [an] individual attempting to prove disability status under [the ADA] to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those 'claiming the Act's protection ... to prove a disability by offering evidence that the extent of the limitation [caused by their own impairment] in terms of their own experience ... is substantial.

*Toyota,* 534 U.S. at 198, 122 S.Ct. 681 (quoting *Kirkingburg,* 527 U.S. at 567, 119 S.Ct. 2162). And, as the Supreme Court has cautioned, "[a]n individualized assessment of the effect of an impairment is particularly necessary when the impairment is one whose symptoms vary widely from person to person." *Toyota,* 534 U.S. at 199, 122 S.Ct. 681; *and see Deas v. River West, L.P.,* 152 F.3d 471, 478 n. 17 (5th Cir.1998) (recognizing varying forms of epilepsy); *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 488, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Further, "the determination of [a plaintiff's] disability is made with reference to the mitigating measures he employs." *Murphy v. United Parcel Service, Inc.,* 527 U.S. 516, 521, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999). In fact, in considering the impact of an impairment on a major life activity, "the predicted effects of the impairment in its untreated state" are not to be considered. *E.E.O.C. v. R.J. Gallagher Co.,* 181 F.3d 645, 653 (5th Cir.1999) (citing *Sutton,* 527 U.S. at 482, 119 S.Ct. 2139); *and see, e.g., Ivy v. Jones,* 192 F.3d 514 (5th Cir.1999) (corrective effects of a hearing aid must be considered when determining whether a person is impaired by hearing loss); *R.J. Gallagher,* 181 F.3d at 653–54 (mitigating effects of medication must be considered in determining the disability status of a cancer patient). "[T]hose whose impairments are largely corrected by medication or other devices are not 'disabled' within the meaning of the ADA." *Sutton,* 527 U.S. at 486, 119 S.Ct. 2139.

■ Here, the parties agree that Galvan suffers from epilepsy, a recognized impairment under the ADA.[3] *See Sutton,* 527 U.S. at 488, 119 S.Ct. 2139; *Todd v. Academy Corp.,* 57 F.Supp.2d 448, 452 (S.D.Tex.1999) (recognizing that "[e]pilepsy qualifies as a physical impairment for the purposes of defining disability under the ADA requirements"). Plaintiff argues that, because state law prohibits those suffering from epilepsy to obtain a driver's license, his medical condition does not permit him to drive, which substantially limits his "ability to care for himself." He argues that the ability to care for oneself has been repeatedly recognized by the courts as a major life activity. (Plaintiff's Response at ¶ 15); *see Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 (5th Cir. 1995); *Talk,* 165 F.3d at 1025; *R.J. Gallagher,* 181 F.3d at 655 n. 5. The City concedes that "caring for one's self" is a major life activity, but insists that Plaintiff's inability to drive, standing alone, does not substantially limit his ability to do so. (Defendant's Reply at ¶ 22).

■ The parties agree on one essential fact: under Texas law, Galvan cannot obtain a commercial driver's license, a requisite for the position of Equipment Operator. A CDL allows one to operate vehicles weighing more than 26,000 pounds, those that seat more than sixteen passengers, or those used to carry hazardous materials. 7 Tex. Transp. Code § 522.041. State law prohibits anyone who has been diagnosed with epilepsy to obtain a CDL. *See* 37 Tex. Admin. Code §§ 16.8, 16.9; 49 C.F.R. § 391.41(b)(8). The court is satisfied that,

---

3. While it does not contest Galvan's claim that he suffers from epilepsy, the City does point out that Plaintiff "has not offered any admissible evidence of a medical diagnosis of epilepsy." (Defendant's Reply at ¶ 15).

given his history of seizures, Galvan is probably not eligible to obtain a commercial license. But that prohibition, while it affects Galvan's ability to work as an Equipment Operator, is not dispositive on the question of whether he is disabled under the ADA. Under the ADA, a disability claim is hinged on the ability to perform major life activities. (*See* Plaintiff's Response at ¶ 14). The Fifth Circuit has recognized that the ability to drive, for personal reasons, is one aspect of the ability to care for oneself, but it has never suggested that a commercial driving permit is essential. *See Dutcher*, 53 F.3d at 726. It follows then that, in making a "rigorous and carefully individualized inquiry" into Galvan's claim of disability, the more relevant issue here is whether he can obtain a personal driver's license. If he cannot, then the extent to which that prohibition limits his ability to care for himself is the pertinent inquiry. *See Kirkingburg*, 527 U.S. at 566, 119 S.Ct. 2162.

Although Plaintiff has made a number of conclusory allegations that he is substantially limited by his inability to drive, he has provided no evidence to show that "the extent of [his] limitation" is substantial "in terms of [his] own experience." *Kirkingburg*, 527 U.S. at 567, 119 S.Ct. 2162. Even assuming that Galvan is, in fact, legally barred from obtaining a driver's license for his personal use, that alone does not establish the requisite "substantial limitation."[4] It bears repeating that the ability to drive is only one aspect to

caring for oneself. *See Dutcher*, 53 F.3d at 726 (recognizing that those abilities include feeding, driving, grooming, carrying groceries, washing dishes, vacuuming, and picking up trash). Galvan's summary judgment evidence does not address those other aspects of daily activity. For instance, Plaintiff has not alleged that his epilepsy limits his ability to feed or groom himself, or to do household chores. *See id.* Further, his own deposition testimony belies his contention that his epilepsy is substantially limiting. In his deposition, the following exchange took place between Galvan and the City's attorney:

Q Okay. All right. These two problems that you indicated, do they affect your ability to walk?

A No.

Q If you were to have one of those seizures, would it affect your ability to walk?

A No.

Q If you were staring in space, it would not affect your ability to walk?

A No.

Q Okay. Would it affect your ability to see or be alert if you were having a seizure?

A Yes, it would.

Q But if you weren't having a seizure, you normally have no problem seeing?

A No.

Q Okay. Or walking?

A No.

Q It's only when you have a seizure-

A Yes,

---

**4.** In fact, the record is not clear on whether Plaintiff is unable to obtain a driver's license. As Defendant points out, any person who has been free of seizures for more than one year may obtain a license without an evaluation by the state's Medical Advisory Board. 37 Tex. Admin. Code § 15.58 (Supp.2003) (Dep't of Public Safety, Medical Advisory Board Referrals). Plaintiff has produced no evidence to show that he has suffered seizures in the last year, which would preclude a license. Fur-

ther, treatment notes from Dr. Randall Light, Galvan's treating physician, dated June 12, 2001, report that Plaintiff had not suffered any seizures, that his condition was well managed by his medication, and that he planned to "apply for a driver's license." (Defendant's Motion, Ex. A: Office Note, at 1). Although that is not conclusive evidence that Galvan is able to obtain a personal driver's license, it does cast doubt on any claim to the contrary.

Q -that it affects your ability to see or walk?

A Yes.

Q Do you have any abilities-do you have any problems hearing when you're not having a seizure?

A No.

Q When you're not in the middle of a seizure, do you have any trouble breathing?

A No.

Q Do you have any trouble caring for yourself, unless you're having a seizure?

A No.

Q When you're having a seizure, would you agree with me that you would have trouble caring for yourself?

A No.

Q You would not agree with that?

A (Shakes head).

Q If you were in the middle of a seizure and you were staring into space, you believe you would be able to care for yourself?

A Yes.

MR ROWLAND: Do you understand what she's saying? Do you understand caring for yourself?

THE WITNESS: Yeah.

Q If you were having a seizure in the middle of the roadway, while you were having the seizure, would you agree with me you might not be able to get out of the way of a car?

A No.

Q You don't agree with me?

A (Shakes head).

Q Okay. You think if you were in the middle of a seizure in the roadway, you would be safe?

A No, I wouldn't be safe.

Q You wouldn't?

A No, I wouldn't.

(Defendant's Motion, Ex. C: Oral Deposition of Steve Galvan at 36–37). Finally, Galvan has produced no admissible medical evidence on either the severity of his epilepsy, or its expected duration or long-term impact. *See* 29 C.F.R. §§ 1630.2(j)(2)(i)-(iii). In essence, Galvan has done no more than "rest[ ] ... on the allegations in [his] pleadings." *McCallum Highlands*, 66 F.3d at 92. On this record, under the "demanding standard for qualifying as disabled," the court cannot conclude that Plaintiff is substantially limited in his ability to care for himself. *See Toyota*, 534 U.S. at 197, 122 S.Ct. 681. For that reason, he is not entitled to the protection of the ADA on the basis of his epilepsy.

*Learning Disabilities*

██ Galvan also alleges that he has learning disabilities, another impairment long recognized under the ADA. *See Dutcher*, 53 F.3d at 725 n. 5 (citing 29 C.F.R. § 1630.2(h)). Although Plaintiff has not cited the particular "major life activities" which are limited by this, courts have held that learning itself is closely tied to essential activities of daily life. *See* 29 C.F.R. § 1630.2(i) (learning is a major life activity). Here, however, even if a link between the two could be inferred from Galvan's pleadings, the court cannot conclude that he is disabled on that basis. Plaintiff has produced no evidence to show that his learning disabilities are substantially limiting *to him*. *See Kirkingburg*, 527 U.S. at 567, 119 S.Ct. 2162. In fact, other than a conclusory assertion that he suffered a brain infection which caused "injury to his memory centers" and that he "has trouble remembering a lot of things that [he] need[s] to do," Plaintiff's pleadings are silent on the extent to which those cognitive problems limit his ability to learn.[5] (*See* Plaintiff's Response at ¶ 15;

---

5. Plaintiff has also submitted an unauthenti- cated letter from his psychologist, Dr. Nancy

Defendant's Motion, Ex. C: Oral Deposition of Steve Galvan at 19–20). Even though he has not articulated it, the court is not blind to the implication that Galvan's cognitive deficits resulted in his inability to pass a driving exam. But he has not shown evidence or caselaw, or even argued that such a failure, standing alone, is a substantial limitation to him.[6] It is indisputable that evidence of an impairment, standing alone, does not entitle one to protection under the ADA. *Id.* For those reasons, the court cannot find that Galvan's learning disabilities are substantially limiting.

 And, even if Galvan is deemed disabled, he still cannot prevail, because there is no evidence to show that he is qualified for the job that he seeks. Under the ADA, a "qualified individual with a disability" is one "who, with or without reasonable accommodation, *can perform the essential functions* of the employment position that such individual holds or desires." *Daigle,* 70 F.3d at 396; 42 U.S.C. § 12111(8) (emphasis added). Indeed,

> [w]hile the ADA focuses on eradicating barriers, the ADA does not relieve a disabled employee or applicant from the obligation to perform the essential functions of the job. To the contrary, the ADA is intended to enable disabled persons to compete in the work-place based on the same performance standards and requirements that employers expect of persons who are not disabled.

*Foreman v. Babcock & Wilcox Co.,* 117 F.3d 800, 808 (5th Cir.1997) (quoting 29 C.F.R. § 1630, App. Background (1996)). Under the relevant EEOC regulations, a job function is considered essential if, for example, it is the purpose of the position; if it can be delegated to only a few employees; if the job requires expertise; or it is a specialized function. 29 C.F.R. § 1630.2(n)(2)(i)-(iii)(1998). "Consideration [must] be given to the employer's judgment as to what functions of a job are essential." *Foreman,* 117 F.3d at 808 (citing 42 U.S.C. § 12111). In addition, the court may consider written job descriptions, the amount of time devoted to the task at issue, and job experience of past and current employees. *Kapche v. City of San Antonio,* 176 F.3d 840, 843 (5th Cir. 1999).

Here, the summary judgment evidence shows that the Equipment Operator position typically requires an employee to drive a commercial vehicle for approximately half of the work day. (*See* Plaintiff's Response, Ex. C: Oral Deposition of Teri Snider, at 33). In fact, on occasion, an Equipment Operator may be required to operate the heavy equipment for an entire eight hour shift. (*Id.* at 34). The record here is undisputed that Equipment Operators, who work in pairs, must hold a

---

Leslie, which describes his cognitive impairments. (Plaintiff's Response, Ex. A: Report of Dr. Nancy Leslie). The letter reports that Galvan has "difficulties in his ability to learn how to read, spell and do math" and "great difficulty with using language to solve problems." It states further that Galvan "has been unable to function at a level where he would be able to get a driver's license for personal use, especially for commercial use." The letter fails to address, however, how those impairments actually affect Galvan's major life activities, and cites no specific examples to show that the limitation is substan-

tial in terms of Plaintiff's personal experiences. *See Kirkingburg,* 527 U.S. at 567, 119 S.Ct. 2162. Moreover, the letter is unsworn, not properly authenticated, and so, it is inadmissible.

6. In fact, the record reflects that Plaintiff has been successful in his academic endeavors. For example, Galvan testified that he graduated from Bryan High School, and that he successfully held a job during the tenth, eleventh and twelfth grades. (*See* Defendant's Motion, Ex. C: Oral Deposition of Steve Galvan at 8–11).

commercial driver's license, so that, if one worker is absent, the other can complete his shift alone. (*Id.*). Defendant reports that

> [d]ue to the seasonal nature of leaf and yard clippings, the Yard/Leaf Waste Teams frequently finish their routes early. However, without a commercial drivers license they could not assist in the completion of other routes or perform other duties that involve the use of heavy equipment.

(Defendant's Motion, Ex. E: Affidavit of Rick Conner at ¶ 31). This assertion has not been controverted in any way. Apparently, Galvan could be called upon to operate the heavy equipment by himself, so that the ability to drive cannot be considered only a "marginal function[ ] of the position." *Cf. Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 708 (5th Cir. 1997) (where employee was required to perform heavy lifting on an emergency basis only, jury could have reasonably concluded that duties requiring heavy lifting were marginal functions of job). The summary judgment evidence shows that more than half of an Equipment Operator's day requires operating commercial vehicles. It is clear to the court that driving that equipment is an "essential function" of the job Plaintiff seeks. *Daigle*, 70 F.3d at 396.

Finally, the undisputed evidence shows that there is no accommodation that the City could provide to Galvan which would eliminate the need for a commercial driver's license. That license is required by state law. *See Kirkingburg*, 527 U.S. at 570, 119 S.Ct. 2162; *Mink v. Wal–Mart Stores, Inc.*, 185 F.Supp.2d 659, 664 (N.D.Miss.2002) (because plaintiff was not qualified to operate commercial vehicle under DOT regulations, inability to perform essential function of job was "uncontestable"); *and see Middleton v. Ball–Foster Glass Container Co., L.L.C.*, 139 F.Supp.2d 782, 796 (N.D.Tex.2001) ("Eliminating an essential function of a job or

redefining essential roles so that another employee substitutes for the disabled employee is not a reasonable accommodation.") (citing *Bradley v. Univ. of Texas M.D. Anderson Cancer Center*, 3 F.3d 922, 925 (5th Cir.1993) (construing Rehabilitation Act of 1973)). For those reasons, Galvan is not qualified to work as an Equipment Operator, and so, cannot claim protection under the ADA. Defendant's motion for summary judgment on the ADA claim is **GRANTED**.

*Title VII*

■ In his Complaint and motion for summary judgment, Plaintiff also purports to sue Defendant under Title VII of the Civil Rights Act of 1964. (*See, e.g.,* Plaintiff's Response at ¶ 2). Under that statute, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (1994). It is well established that

> [e]mployment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue.

*Taylor v. Books A Million, Inc.* 296 F.3d 376, 378 –379 (5th Cir.2002) (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir.1996)). Here, Galvan has produced a copy of a right to sue letter he received from the EEOC. That letter makes clear, however, that the EEOC investigated Galvan's potential ADA claims only, and has made no inquiry into his rights under Title VII. (*See* Plaintiff's Complaint, Ex. 1: Dismissal and Notice of Rights). On this record, Plaintiff has not shown that he has exhausted his adminis-

trative remedies under Title VII, and so, he is not entitled to bring a statutory claim in federal court. Defendant's motion for summary judgment, on the putative Title VII claim, is **GRANTED**.

*Attorney's Fees*

 Finally, Plaintiff has asked the court to order Defendant to reimburse his reasonable costs and attorney's fees, under the ADA's fee-shifting provision, which is codified at 42 U.S.C. § 12205. (Plaintiff's Complaint at ¶ 20). That section is set out below:

> [i]n any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

42 U.S.C. § 12205; *and see No Barriers, Inc. v. Brinker Chili's Texas, Inc.,* 262 F.3d 496, 497 n. 1 (5th Cir.2001). Section § 12205 gives the courts discretion to award reasonable attorney's fees to a prevailing party, in an action filed under the ADA. *No Barriers,* 262 F.3d at 498. However, the United States Supreme Court has made clear that only "enforceable judgments on the merits and court-ordered consent decrees create [a] 'material alteration of the legal relationship between the parties' necessary to permit an award of attorney's fees" under that provision. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 1841, 149 L.Ed.2d 855 (2001). Because Galvan has obtained neither of those forms of relief, he is not entitled to recover his attorney's fees under the ADA. Plaintiff's request for those fees is **DENIED**.

**Conclusion**

Based on the foregoing, it is ORDERED that the motion by Defendant, for summary judgment on Plaintiff's claims, is GRANTED. Plaintiff's request for attorney's fees is DENIED.

The Clerk of the Court shall enter this order and provide a true copy to all counsel of record.