907 So.2d 810 (2005)
Paulette B. DESCANT
v.
TPA, INC., Koch TPA, Inc., and Koch Industries, Inc.
Paulette Descant
v.
TPA Inc., Koch TPA, Inc. and Koch Industries, Inc.
Nos. 05-CA-144, 04-C-1326.
Court of Appeal of Louisiana, Fifth Circuit.
June 28, 2005.
*811 Donna U. Grodner, Charlotte C. McDaniel, Grodner and Associates, Baton Rouge, Louisiana, Robert J. Snyder, Gramercy, Louisiana, for Plaintiff/Appellee.
Carey J. Guglielmo, Stephen Dale Cronin, Guglielmo, Marks, Schutte, Terhoeve & Love, Baton Rouge, Louisiana, for Defendant/Appellant.
Thomas E. Balhoff, Judith R. Atkinson, Carlton Jones, III, Roedel, Parsons, Koch, Blache, Balhoff & McCollister, Baton Rouge, Louisiana, for Defendant/Appellee.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY, and MARION F. EDWARDS.
MARION F. EDWARDS, Judge.
Plaintiff, Paulette Descant ("Descant"), was employed by Marathon Ashland Petroleum Company ("Marathon") in Garyville, Louisiana on August 12, 2002 as an operations technician in Sulfur Recovery Unit No. 45 ("SRU-45"). At approximately 8:15 p.m. on the evening of that date, Descant witnessed a fire, which resulted in the systematic shut down of SRU-45 over three hours. As a part of her duties, Descant was instructed by a board operator to "swap the sulfur pit gases to the thermal oxidizer." In the course of this process, at approximately 11:15 p.m., Descant opened a valve when, simultaneously, an explosion occurred in the sulfur pit. As a result of the explosion, the sulfur pit cover blew off, hitting Descant and allegedly causing her injury. An investigation conducted by Marathon concluded that the "sulfur pit over pressured when the valve on top of the pit was opened to lineup the pit gas to the thermal oxidizer. Condensate had collected in the thermal oxidizer line from the ejector. This line drained into the pit flashing and over pressurized the pit." The initial cause of the fire that Descant saw, which was deemed a separate accident by Marathon's own investigation, was attributed to insulation placed on a transition piece, against specifications, on top of a furnace shell.
In August of 2002, Descant filed suit in the Fortieth Judicial District Court for the Parish of St. John the Baptist against TPA Inc., Koch TPA, Inc. ("Koch")[1] and Koch Industries, Inc., who designed and served as contractors for the construction of SRU-45 for Marathon. In October of 2003, Descant added Harmony, L.L.C. ("Harmony") as a defendant. In the course of constructing SRU-45, Harmony was a subcontractor for TPA Inc. and was responsible for mechanical construction and civil foundation work on the project. Descant alleged in her amended petition that Harmony was the party responsible for insulating the transition piece that caused the fire and was also responsible for installing the defective steam valve that she was turning when she became injured.
On September 7, 2004, Harmony moved for summary judgment on the basis that neither the act of insulating the transition piece that allegedly caused the fire nor the *812 act of installing the allegedly defective valve was a cause of the sulfur pit explosion that led to Descant's injury. Descant likewise filed a Motion For Partial Summary Judgment asserting that Harmony's act of insulating the transition piece was not related to the sulfur pit explosion that led to her injury.
In a judgment dated October 5, 2004, the trial court granted Harmony's Motion For Summary Judgment and Descant's Motion For Partial Summary Judgment, specifically finding that no evidence suggested that the transition piece was a substantial factor in causing the sulfur pit to explode.[2] Koch timely filed the present appeal.

LAW AND ANALYSIS
On appeal, Koch asserts that the trial court erred in granting Harmony's Summary Judgment and Descant's Motion for Partial Summary Judgment and in finding that Harmony's insulation of the transition piece that led to the fire was not a substantial factor in the cause of Descant's injury.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate.[3] An appellate court must ask the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact remaining to be decided, and whether the appellant is entitled to judgment as a matter of law.[4] The appellate court must consider whether the summary judgment is appropriate under the circumstances of the case.[5] There must be a "genuine" or "triable" issue on which reasonable persons could disagree.[6] Under the amended version of LSA-C.C.P. art. 966, the burden of proof remains on the mover to show "that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." A material fact is one that would matter on the trial of the merits.[7]
In regard to a review of whether an act or event is a "substantial factor," this Court noted in the case of Smith v. Avondale Indus., Inc.:[8]
To satisfy the substantial factor test, the plaintiff must prove by a preponderance of the evidence that the defendant's conduct was a substantial factor in bringing about the complained of harm. Dabog v. Deris, 625 So.2d 492, 493 (La.1993).
Whether the defendant's conduct was a substantial factor in bringing about the harm, and, thus, a cause-in-fact of the injuries, is a factual question to be determined by the factfinder. Theriot v. Lasseigne, 93-2661, p. 5 (La.7/5/94), 640 So.2d 1305, 1310 (citing Cay v. State DOTD, 93-0887 *813 (La.1/14/94), 631 So.2d 393 (La.1994)). A court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Id. (citing Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990)).
In granting appellees' motions, the trial court relied heavily on the Louisiana Supreme Court's decision in Perkins v. Entergy Corp.[9] In Perkins, a negligence claim was brought against various electric utility companies following an oxygen flash fire at an air separation plant. The plaintiffs in Perkins alleged that a "voltage sag" caused by defendant's automatic relay equipment failing to operate properly, which, in turn, caused the facility's major equipment to automatically shut down. While the plant never completely lost power, the voltage sag triggered protective devices on the compressor motors designed to prevent them from burning up during an extended period of low voltage operation. It was in the process of re-starting the air compressors that the flash fire, which injured the plaintiffs, occurred at a nearby station at the plant.
The Supreme Court in Perkins found that:
[T]he plaintiffs have not presented sufficient evidence to prove that it is more likely than not that the power disturbance was a substantial factor in the occurrence of the flash fire. There is nothing in the record showing that the malfunctioning of the automatic pressure control valve, which indisputably was a substantial factor causing the fire, was linked to the power outage.
In the present case, Harmony provided an entire volume of exhibits in support of its Motion For Summary Judgment that demonstrated a distinction between the fire that prompted the unit shut down and the explosion that subsequently occurred in the sulfur pit. First, documents pertaining to Marathon's own internal investigation of the sulfur pit explosion conclude that the explosion occurred because of the collection of condensation "in the thermal oxidizer line from the ejector" which over pressurized the sulfur pit. In a separate finding regarding the fire, Marathon concluded that the application of external insulation resulted in vessel failure. Testimony from a Marathon employee conducting the investigation, Bolivar Lewis, further confirmed that Marathon considered the reaction furnace failure to be a "separate and unrelated issue" from why Descant was injured. Marathon further compiled a list of three recommendations to prevent a similar explosion from happening in the future.
Also of note is a report prepared by Descant's own expert, Bert Wilkins, Jr., Ph.D, in which he concluded, in relevant part:
Descant ... was attempting to put the Sulfur Pit Eduction System (SPES) on-line to the Thermal Oxidizer (T/O) because a reaction furnace shell failure required shut-down of the ECC, but any reason for shutting down the ECC would have caused the blast which blew off the sulfur pit doorplate. Hence the cause of furnace shell failure and the cause of sulfur pit failure are not related.
After a review of the extensive discovery conducted prior to the filing of Harmony and Descant's motions, the trial court found that there was a clear separation between the first accident, which involved the insulated transition piece, and the sulfur *814 pit explosion that led to Descant's alleged injury:
In their opposition memorandum TPA interprets Perkins as requiring us to "decide whether Paulette Descant would have been injured on August 12, 2001 at approximately 11:15 p.m. by an explosion of the sulfur pit had the fire ... not occurred." [Citation omitted]. This argument strikes us as contrary to the Perkins decision in that it essentially requires us to employ a "but for" test when concurrent causes exist.... Although events in time probably would not have unfolded exactly as they did had a fire not broken out at 8:15 p.m. on August 12, 2001, we believe that the sulfur pit would have exploded just as it did on that date. It seems clear that whatever part Harmony played in the 8:15 p.m. fire, it was not a substantial factor in causing the sulfur pit to explode three hours later (it did not increase the risk of the explosion occurring). All evidence referenced by the parties in this motion points to a design flaw, a failure to follow emergency protocol, or human error. No evidence has been submitted which suggests that the transition piece fire was a substantial factor in causing the sulfur pit explosion and the plaintiff's injuries.
Koch contends, however, that the trial court should have applied the analysis used by the court in Istre v. Fidelity Fire & Cas. Ins. Co.[10] In Istre, a motorist, who was broadsided by another car at an intersection controlled by a traffic light, brought suit against a construction company whose backhoe operator had inadvertently knocked out electrical power to the traffic light. The jury found the construction company 25 percent at fault for the accident. On appeal, the Third Circuit upheld the jury's verdict against the construction company, stating:
The construction company's main argument is that its duty to avoid knocking out electrical power does not extend to the risk that one hour later, a driver at an intersection four miles away, will fail to see that traffic lights are not working and that other drivers were treating the intersection as a four-way stop, and that the non-observant driver will run the four-way stop, out of turn, and hurt another driver who was entering the intersection in obedience to a four-way stop rotation. To this it pleads that the company could not have known that engaging this one power line would create a general outage affecting signal lights four miles away.
We reject this argument. This backhoe operator knew the risk of his backhoe knocking out power. His construction company knew or should have known the risks to people and property caused by power outages, and the predictability of widespread effects and delays in restoring power. The increased risk of an accident caused by this defendant's conduct was still present when the accident occurred. This accident to this plaintiff was reasonably foreseeable. This defendant is liable to the plaintiffs for the breach of its duty.
Following the reasoning in Istre, Koch argues, in essence, that had Harmony not insulated the transition piece there never would have been a fire and, had there not been a fire, the shut down of the unit would not have been necessary. Koch concludes that "[a]ll of the exhibits and purportedly uncontested facts advanced by Harmony (and Plaintiff) do not change the fact that the failure of the transition piece of the Unit, which was the result of Harmony's insulation of that piece, set in motion a chain of events that ultimately led to Plaintiff's alleged injuries." (Emphasis as found in the original.)
*815 In addressing this argument, however, the trial court noted in its Reasons For Judgment:
Although it is difficult to pinpoint a timeline in this case, we can note that the fire and the shut-down of Unit 45 overlapped in time. The fire was noticed around 8:15 p.m. and we cannot say with certainty when it was successfully controlled. The unit shut-down began soon after the fire was reported and the shut-down was completed by 11:00 p.m. The plaintiff testified in her deposition that she could hear the board operator shutting down the unit as she watched the fire team. Fifteen minutes later, the operator asked her to swap the sulfur pit gases. We find TPA's temporality argument to be unconvincing. Whether separated by three hours or fifteen minutes, the first accident is clearly separable from the second.
After a review of the record, we conclude that the trial court was correct in its finding that the fire, which occurred at Marathon on August 12, 2002, was not a cause in fact of the alleged injury that Descant allegedly suffered later that evening. As in the Perkins case, which we find controlling, there was not sufficient evidence presented to prove that it is more likely than not that the initial fire was a substantial factor in the occurrence of the sulfur pit explosion. Conversely, the evidence supports the trial court's finding that two separate and distinct causes existed.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the appellant, Koch TPA, Inc.
AFFIRMED.
NOTES
[1] The trial court referred to Koch as "TPA" throughout the body of its Reasons For Judgment.
[2] Following judgment, Koch applied for supervisory writs to this Court. We, thereafter, consolidated Koch's writ with the present appeal, as both contained identical issues. See, Writ No. 04-C-1326.
[3] Bua v. Dressel, 96-79 (La.App. 5 Cir. 5/28/96), 675 So.2d 1191, writ denied, 96-1598 (La.9/27/96), 679 So.2d 1348 (citing Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180).
[4] Tassin v. City of Westwego, 95-307 (La.App. 5 Cir. 12/13/95), 665 So.2d 1272.
[5] Rowley v. Loupe, 96-918 (La.App. 5 Cir. 4/9/97), 694 So.2d 1006.
[6] Id. at 1008.
[7] J.W. Rombach, Inc. v. Parish of Jefferson, 95-829 (La.App. 5 Cir. 2/14/96), 670 So.2d 1305.
[8] 02-939 (La.App. 5 Cir. 12/30/02), 834 So.2d 1233, 1236-1237.
[9] XXXX-XXXX (La.3/23/01), 782 So.2d 606, 617.
[10] 628 So.2d 1229, 1232 (La.App. 3 Cir.1993).