942 So.2d 1147 (2006)
Roland VARNER
v.
BLESSEY ENTERPRISES, INC./Blessey Marine Services, Inc.
No. 06-CA-168.
Court of Appeal of Louisiana, Fifth Circuit.
September 26, 2006.
*1148 Joseph J. Weigand, Jr., Houma, Louisiana, for Plaintiff/Appellant.
M. Nan Alessandra, Taryn S. Southon, Phelps Dunbar LLP, New Orleans, Louisiana, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS, and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
Plaintiff/appellant, Roland Varner ("Varner"), appeals a summary judgment granted by the Twenty-Fourth Judicial District Court and that dismissed his cause of action for damages. We affirm.
On October 21, 2003, Varner filed a petition alleging that, on January 28, 2002, he was employed as a tankerman by defendant/appellee, Blessey Enterprises, Inc. ("Blessey") (on the vessel LAURA ANN BLESSEY ("LAURA ANN")). On May 28, 2002, Varner suffered a heart attack in an incident unrelated to his employment, and, as a result, an ICD unit (a pacemaker and defibrillator) was inserted into his chest. He was released by his physician on October 23, 2002 to return to work with weight restrictions. The weight restriction was lifted on November 1, 2002. Blessey advised Varner that he had to take another physical with its company physician, Dr. Timothy Lavin ("Dr. Lavin"), before returning to work. Varner alleged *1149 that Dr. Lavin refused to allow him to return to work, that he is a "disabled person" as defined in LSA-R.S. 23:301 et seq. and that Blessey's action constituted employment discrimination pursuant to LSA-R.S. 23:323. Varner prayed for compensatory damages, back pay, benefits, attorney's fees, and court costs. Among other things, Blessey denied that Varner was a "qualified individual with a disability" within the meaning of the statute.
Varner filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC"). While it does not appear that there was a full blown hearing by the commission, the EEOC closed the file on August 29, 2003, with the following finding:
Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.
Blessey filed a Motion for Summary Judgment. In Varner's deposition submitted in connection with the motion, Varner stated that his job duties on the LAURA ANN included loading and unloading barges, discharging, chipping, and painting. The barges transport hazardous materials and hazardous gases. The material on the barge is explosive, and Varner has been trained as a firefighter. Ninety percent of the time, the tankerman is the first response to a fire. Varner stated that he discussed his job duties with Dr. Thanh Duong Wagner ("Dr. Wagner"), telling her there would be heavy lifting and climbing, and he explained the Department of Transportation regulations to her. He told her he would be around radar and needed the 50-pound restriction lifted in order to return to work. He also told her he would be around hazardous materials. Dr. Wagner told him that if he felt he could do his job, then he could go back to work.
Varner stated that he was told by Chad Parks ("Parks"), personnel manager at Blessey, he would have to undergo a physical with the company physician before he could be rehired. According to Varner, when Dr. Lavin examined him, the physician "did not understand" when told about the ICD. He testified that, after the physical, he spoke with Parks, who told him that Dr. Lavin suggested he not be allowed back on the boat, and that Parks told him the doctor did not understand the ICD procedure. Parks also denied him the opportunity to return as a deckhand. No one at Blessey told him he was disabled, and Varner felt he was not allowed to return to work because Dr. Lavin did not understand the procedure performed on him. Varner stated that he has no physical limitations, is not disabled, that he passed a stress test, and that he had been employed since then as a tankerman with several companies. He was working at Republic Barge Transportation at the time of the deposition. Varner averred that he could still perform the duties of a tankerman and agreed that being able to respond to emergencies is one of the central functions of the tankerman.
In his Response to Statement of Uncontested Material Facts filed in connection with the summary judgment, Varner again admitted that every member of the crew of the vessel LAURA ANN, including the tankerman, must be able to respond to emergency situations such as fires or explosions and that he did not provide his treating physician, Dr. Wagner, with a copy of his job description or a copy of the Department of Transportation regulations applicable to his position as tankerman. He contended that he did explain his job *1150 duties to Dr. Wagner. Varner also stated that he was issued a Coast Guard tankerman's license in 2004 after passing a stress and eye examination.
In the record is the medical report issued by Dr. Lavin of Concentra Medical Center on November 14, 2002. In the section of the report relative to certification, the box "Does not meet standards" was checked, with a comment "do not place in emergency response position or job that requires this as an essential function." Although the physician checked the statement that Varner was "able to perform essential functions as listed," the report concluded: "do not place in job where emergency response is an essential function. If this can be accommodated, patient will require an exercise stress test. Please call if any questions."
In connection with the Motion for Summary Judgment, Blessey submitted the affidavit of Parks, Blessey's personnel manager, who deposed that, in accordance with maritime law, Blessey requires all tankerman in its employ to have the requisite certifications and licenses from the United States Department of Transportation and from the Coast Guard. Failure to hold the required certifications disqualifies an individual from employment at Blessey. Parks further stated that it is critical to all crew members, and an essential function of a tankerman, that every member of the crew be able to respond immediately to an emergency situation on a vessel and failure to do so could have dire consequences. Parks told Varner he could return to his job upon getting a complete medical release. However, Dr. Lavin concluded that Varner was not physically fit to perform emergency response functions and that conclusion was the sole reason Varner was not allowed to return to work.
Appellate courts should review the granting of a summary judgment de novo under the same criteria governing the trial court's consideration of whether a summary judgment is appropriate.[1] An appellate court must ask the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact remaining to be decided, and whether the appellant is entitled to judgment as a matter of law.[2] The appellate court must consider whether the summary judgment is appropriate under the circumstances of the case.[3] There must be a "genuine" or "triable" issue on which reasonable persons could disagree. A material fact is one that would matter on the trial of the merits.[4]
In Louisiana, Louisiana Employment Discrimination Law is codified in LSA-R.S. 23:301, et seq. LSA-R.S. 23:323 states that no otherwise qualified disabled person shall, on the basis of a disability, be subjected to discrimination in employment. Employers, etc., are not permitted to engage in certain practices with regard to "otherwise qualified disabled person[s]," including failure or refusal to hire, promote, or reasonably accommodate an otherwise qualified disabled person "on the basis of a disability, when it is unrelated to the individual's ability, with reasonable accommodation, to perform the duties of a particular job or position." An "otherwise *1151 qualified disabled person" means a disabled person who, with reasonable accommodation, can perform the essential functions of the employment position that such person holds or desires. Under LSA-R.S. 23:322, "disabled person" means any person who has a physical or mental impairment which substantially limits one or more of the major life activities, or has a record of such an impairment, or is regarded as having such an impairment.
The Louisiana Act is modeled after the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C.A. § 12101, et seq.
Varner does not argue that he is disabled but, rather, that he was regarded as disabled by Blessey to the extent that he could not work as a seaman for any company on any vessel. Blessey argues that Varner is not qualified to work as a tankerman and that it did not regard Varner as being disabled within the meaning of the law.
The Federal Courts have determined "regarded as" claims to mean the following:
An individual is "regarded as" disabled where a covered entity mistakenly believes that: (1) the person has a physical impairment that substantially limits one or more major life activities; or (2) an actual, non-limiting impairment substantially limits one or more major life activities. In both instances, the covered entity must entertain some misperception regarding the individual-either that he has a substantially limiting impairment that: (1) he does not have; or (2) is not so limiting as believed. Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.[5]
Varner urges that Blessey's actions prevented him from earning his livelihood as a seaman in a class of jobs, averring that New Orleans is a port city and the oil and gas industry is a major employer of seaman. He contends that Blessey's reasons for refusing to employ him substantially restricts his life activity of working. At issue is Varner's contention that he was refused not only the job of tankerman, but also that of deckhand.
Dr. Lavin did not approve Varner for the requisite certification and, instead, instructed that he was not to be placed in any position requiring an emergency response. Blessey maintains that it is essential that all members of the crew boat be able to respond immediately to any emergency, and Varner does not dispute this statement.
When the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs. Reflecting this requirement, the EEOC uses a specialized definition of the term "substantially limits" when referring to the major life activity of working:
"significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." § 1630.2(j)(3)(i).

*1152 The EEOC further identifies several factors that courts should consider when determining whether an individual is substantially limited in the major life activity of working, including the geographical area to which the individual has reasonable access, and "the number and types of jobs utilizing similar training, knowledge, skills or abilities, within the geographical area, from which the individual is also disqualified." §§ 1630.2(j)(3)(ii)(A), (B). To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.[6]
The ADA allows employers to establish physical criteria. Accordingly, an employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment are preferable to others, just as it is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job.[7]
The evidence establishes that all members of the crew on a vessel such as the LAURA ANN carrying hazardous materials must be able to make emergency responses, and, at the time Varner was refused reemployment, he was not medically approved for such activity and, thus, not approved for certification. If the oil and gas industry in New Orleans is a major employer of seamen as averred by Varner, it is by no means the only one. Blessey was free to determine that Varner's medical condition limited him to the extent that it made him unsuited for a position on its type of vessel.
Under these circumstances, we hold that Varner does not meet the criteria of either being disabled or that he was regarded as disabled within the meaning of the applicable statutes. Thus, we find no question of material fact and conclude that the summary judgment was properly granted.
AFFIRMED.
NOTES
[1] Felix v. Briggs of Oakwood, Inc., 99-721 (La.App. 5 Cir. 12/15/99), 750 So.2d 1091, 1093 (citing Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152).
[2] Descant v. TPA, Inc., 05-144 (La.App. 5 Cir. 6/28/05), 907 So.2d 810, 812.
[3] Id.
[4] Id.
[5] Mason v. United Air Lines, Inc., 274 F.3d 314, 317 (5th Cir.2001) (footnotes omitted); see also, Sutton v. United Air Lines Inc., 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).
[6] Sutton v. United Air Lines, Inc., 527 U.S. 471, 491-92, 119 S.Ct. 2139, 2151, 144 L.Ed.2d 450 (1999).
[7] Id.