966 So.2d 763 (2007)
U.S. Trustee, John Clifton CONINE for the ESTATE OF Dennis ADDIE, Plaintiff-Appellant,
v.
UNIVERSAL OIL PRODUCTS COMPANY, Defendant-Appellee.
No. 42,409-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 2007.
*764 Nelson W. Cameron, Shreveport, for Appellant.
John T. Cox, Jr., Baton Rouge, for Appellee.
Before WILLIAMS, PEATROSS and LOLLEY, JJ.
WILLIAMS, J.
Plaintiff, U.S. Bankruptcy Trustee, John Clifton Conine for the Estate of Dennis Addie, seeks reversal of the trial court's ruling granting summary judgment in favor of defendant, Universal Oil Products Company ("UOP"). For the reasons that follow, we affirm the judgment of the trial court.

FACTS
Dennis Addie was employed by UOP as a maintenance technician from June 30, 1992 until January 9, 2002. Addie suffered a migraine headache on June 12, 2001 and *765 was absent from work June 14-16, 2001. He returned to work on June 18, 2001, but he left work that day complaining of another headache. Addie remained absent from work June 18-July 11, 2001. He returned to work July 12-19, 2001, but he left work again on July 19, 2001, complaining of a headache. Addie did not return to work until August 6, 2001, after obtaining a full medical release. He worked the next two weeks, but on August 20, 2001, Addie called UOP with complaints of headaches.
On September 17, 2001, Addie was examined by the company physician, Dr. James Dossey, who placed Addie on medical restrictions due to complaints of dizziness. On October 19, 2001, Addie was evaluated by his private physician, who restricted Addie from working on ladders or from unprotected heights. However, due to the nature of Addie's job duties, UOP required a "no restrictions release" before allowing Addie to return to work.
At some point, Addie was placed on leave under the Family and Medical Leave Act ("FMLA"). After the maximum twelve weeks was exhausted, he was placed on paid short term disability leave with instructions to notify the company once his symptoms resolved. By letter dated November 27, 2001, Addie was advised that his short term disability leave would end on December 13, 2001.
On December 5, 2001, Addie obtained an unrestricted release to return to work from his primary care physician. When Addie notified UOP that he had been released to return to work, UOP arranged for him to be examined by Dr. Dossey. On December 13, 2001, Addie was examined by Dr. Dossey, who refused to provide a full release for Addie to return to work due to continued symptoms of dizziness. When UOP received a copy of the unrestricted release from Addie's private physician and the conflicting report from Dr. Dossey, UOP arranged for Addie to be reevaluated by the neurologist who had previously examined him.
On December 19, 2001, Addie was examined by the neurologist. The neurologist noted that Addie's headaches were controlled with medication and he had not experienced any dizziness in approximately two months. Therefore, the neurologist opined that Addie could return to work without restrictions. Dr. Dossey then released Addie to return to "normal work without restrictions."
The management of UOP reviewed Addie's medical records and discovered that his dizziness had been resolved for two months prior to his release to return to work. Consequently, on January 9, 2002, UOP terminated Addie for excessive absenteeism.
On April 12, 2002, Addie filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.[1] The EEOC dismissed the claim, finding that Addie had not established an ADA violation.
On July 13, 2006, Addie's bankruptcy trustee filed suit against UOP, alleging that UOP wrongfully discharged Addie from his position in violation of the Louisiana Human Rights Act ("LHRA").[2] In response, UOP moved for summary judgment. The district court granted summary *766 judgment, finding that plaintiff failed to prove that Addie's headaches substantially limited his ability to work. This appeal followed.

DISCUSSION
Plaintiff contends the district court erred in concluding that the evidence was insufficient to raise a genuine issue of material fact. Therefore, according to plaintiff, summary judgment should have been denied.
In determining whether summary judgment is appropriate, appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is proper. Suire v. Lafayette City-Parish Consolidated Government, XXXX-XXXX (La.4/12/05), 907 So.2d 37. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action and shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(2) and (B).
The burden of proof remains with the movant. LSA-C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Id. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. Id.
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. LSA-C.C.P. art. 967(B).
LSA-R.S. 23:323 provides, in pertinent part:
A. No otherwise qualified disabled person shall, on the basis of a disability, be subjected to discrimination in employment.
B. An employer, labor organization, or employment agency shall not engage in any of the following practices:
(1) Fail or refuse to hire, promote, or reasonably accommodate an otherwise qualified disabled person on the basis of a disability, when it is unrelated to the individual's ability, with reasonable accommodation, to perform the duties of a particular job or position.
(2) Discharge or otherwise discriminate against an otherwise qualified disabled person with respect to compensation or the terms, conditions, or privileges of employment on the basis of a disability when it is unrelated to the individual's ability to perform the duties of a particular job or position.

* * *
"Disabled person" means any person who has a physical or mental impairment which substantially limits one or more of the major life activities, or has a record of such an impairment, or is regarded as having such an impairment. LSA-R.S. *767 23:322(3). "Major life activities" means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. LSA-R.S. 23:322(7).
To defeat a motion for summary judgment against an employment disability claim, the claimant must establish a prima facie case that: (1) he has a disability, as defined by the statute, (2) he is qualified for the job, and (3) an adverse employment decision was made solely because of the disability. Thomas v. Louisiana Casino Cruises, Inc., XXXX-XXXX (La.App. 1st Cir.6/25/04), 886 So.2d 468, writ denied, XXXX-XXXX (La.10/29/04), 885 So.2d 598; Hook v. Georgia-Gulf Corp., 99-2791 (La. App. 1st Cir.1/12/01), 788 So.2d 47.
The LHRA, codified in LSA-R.S. 23:301, et seq., is modeled after the ADA. In interpreting Louisiana's employment discrimination laws, our courts have relied upon similar federal statutes and the interpreting federal jurisprudence. See Thomas, supra; Boudreaux v. Louisiana Casino Cruises, Inc., 99-1168 (La.App. 1st Cir.6/23/00), 762 So.2d 1200, writ denied, 2000-2229 (La.10/27/00), 772 So.2d 651; Hicks v. Central Louisiana Electric Company, Inc., 97-1232 (La.App. 1st Cir.5/15/98), 712 So.2d 656, 658.
The proper analysis of an employment discrimination case based on a disability under the LHRA must begin with a determination of the threshold issue of whether or not the individual qualifies as "disabled" under the Act. Hook, supra. In the instant case, plaintiff does not argue that Addie is actually disabled. Rather, he contends that Addie was "regarded as" disabled by UOP.
An individual is "regarded as" disabled where a covered entity mistakenly believes that: (1) the person has a physical impairment that substantially limits one or more major life activities; or (2) an actual, non-limiting impairment substantially limits one or more major life activities. Sutton v. United Air Lines Inc., 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); Mason v. United Air Lines, Inc., 274 F.3d 314 (5th Cir.2001); Varner v. Blessey Enterprises, Inc., 2006-168 (La.App. 5th Cir.9/26/06), 942 So.2d 1147, writ denied, 2006-2574 (La.12/15/06), 945 So.2d 697; Beaumont v. Exxon Corp., 2002-2322 (La. App. 4th Cir.3/10/04), 868 So.2d 976, writ denied, XXXX-XXXX (La.9/3/04), 882 So.2d 609. In both instances, the covered entity must entertain some misperception regarding the individual  either that he has a substantially limiting impairment that: (1) he does not have; or (2) is not so limiting as believed. As stated above, major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. Mason, supra; Varner, supra.
Whether an impairment substantially limits a major life activity is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact. Dutcher v. Ingalls Shipbuilding, 53 F.3d 723 (5th Cir.1995); Thomas, supra. When the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs. Sutton, supra; Blanks v. Southwestern Bell Communications, 310 F.3d 398 (5th Cir.2002); Thomas, supra. An inability to perform a single job, or a narrow range of jobs, can be seen as not constituting a substantial limitation on the major life activity of working, or as not reaching a major life activity. Blanks, supra; Dutcher, supra. The inability to perform one aspect of a job while retaining the ability *768 to perform the work in general does not amount to a substantial limitation of the activity of working. Dutcher, supra.
Whether an impairment substantially limits a claimant in a broad range of jobs, or only in a narrow range, is a mixed question of law and fact. Thomas, supra, citing Bridges v. City of Bossier, 92 F.3d 329 (5th Cir.1996), cert. denied, 519 U.S. 1093, 117 S.Ct. 770, 136 L.Ed.2d 715 (1997). The question of what constitutes a substantial limitation on a major life activity is a legal question. Id. An underlying factual question could involve what type of jobs and how many were available to the claimant despite his impairment. Id.
In Sutton, supra, the plaintiffs, who had severe myopia, applied for employment as commercial global airline pilots. The airline refused to hire them because they failed to meet the minimum vision requirement. The plaintiffs filed suit alleging disability discrimination under the ADA. The United States Supreme Court held that the plaintiffs failed to properly allege that their poor eyesight was "regarded as" an impairment that substantially limited them in the major life activity of working. The Court stated:
By its terms, the ADA allows employers to prefer some physical attributes over others and to establish physical criteria. An employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity. Accordingly, an employer is free to decide that physical characteristics or medical conditions that do not rise to the level of an impairment  such as one's height, build, or singing voice  are preferable to others, just as it is free to decide that some limiting, but not substantially limiting, impairments make individuals less than ideally suited for a job.
* * *
To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs.
* * *
Because the position of global airline pilot is a single job, this allegation does not support the claim that respondent regards petitioners as having a substantially limiting impairment.

119 S.Ct. at 2150-51 (emphasis in original).
In Varner, supra, the plaintiff, who was employed by the defendant as a tankerman, suffered a heart attack in an incident unrelated to his employment. Five months later, the plaintiff was released to return to work with medical restrictions. The employer advised the plaintiff that he would have to be examined by the company physician before returning to work. The plaintiff filed suit alleging that the employer refused to allow him to return to work, contending he was a "qualified individual with a disability" within the meaning of the LHRA. The appellate court rejected the claim, stating:
If the oil and gas industry in New Orleans is a major employer of seamen as averred by Varner, it is by no means the only one. Blessey was free to determine that Varner's medical condition limited him to the extent that it made him unsuited for a position on its type of vessel.
Under these circumstances, we hold that Varner does not meet the criteria of *769 either being disabled or that he was regarded as disabled within the meaning of the applicable statutes. Thus, we find no question of material fact and conclude that the summary judgment was properly granted.
Id. at 1152.
In Thomas, supra, the plaintiff, who had a chronic medical condition, worked as a security guard for a casino. He presented a note to his employer from his doctor indicating that he "must work inside only." Shortly thereafter, the employer terminated the plaintiff for "chronic medical condition which prohibits him from performing necessary duties of a security officer." The court held that the plaintiff failed to establish that he was disabled under the LHRA, stating:
A physical impairment, standing alone, is not necessarily a disability as contemplated by the applicable law for discrimination claims. From our review of the record before us, we find that Mr. Thomas failed to demonstrate a genuine issue of material fact existed as to how many jobs or job categories were available, and whether he was unable to work in a broad range of jobs as a result of his asserted impairment.
Id. at 471-72 (internal citation omitted).
In Smith v. Thurman Oils, Inc., XXXX-XXXX (La.App. 1st Cir.12/28/06), 951 So.2d 359, writ denied, XXXX-XXXX (La.3/23/07), 951 So.2d 1106, an employee filed suit alleging that he was wrongfully terminated in violation of the Louisiana Employment Discrimination Law. The plaintiff's supervisor had stated that he felt it was dangerous for the plaintiff to drive a fuel truck. The court held that the plaintiff failed to meet his burden of proving that his employer regarded him as being disabled. The court concluded that the testimony of the plaintiff's supervisor did not establish that the plaintiff was unable to perform a broad class of jobs.
In the instant case, in granting summary judgment, the district court stated:
The inquiry now turns to whether or not Addie's condition substantially limits his ability to work. While migraine headaches can and often do affect one's ability to work, the petitioner has put forth no evidence that Addie's headaches substantially limit his ability to work. The mere fact that Addie is limited in some work-related activities due to his condition, such as the inability to safely climb ladders due to dizziness, does not satisfy the inquiry.
We agree. It is clear from the depositions of the members of UOP's management team that UOP believed Addie's dizziness rendered him unable to safely perform the duties of a maintenance technician because climbing was an essential element of the job. James Labanosky, the manager of UOP's Shreveport plant, testified that the facility consisted of multiple levels and virtually every position in the plant required climbing. However, there is no evidence in the record that Addie's condition substantially limited his ability to work in general, or more specifically, that UOP "regarded" him as unable to work in general. Therefore, the district court was correct in concluding that Addie did not meet the statutory definition of "disabled person," an essential element of a discrimination claim under the LHRA.

CONCLUSION
For the foregoing reasons, we find no error in the trial court's grant of summary judgment in favor of UOP. The judgment is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] Addie also filed a claim with the Louisiana Commission of Human Rights. However, the Commission dismissed the claim, deferring to the EEOC.
[2] Plaintiff originally filed suit in U.S. District Court, where plaintiff's ADA claim was dismissed on the grounds that it was untimely filed. However, the state law claims were not dismissed.